IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JON NATHANSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**YALE NEW HAVEN HEALTH SERVICES CORP.**,<br><br>Defendant. | Case No. 3:25-cv-00609<br><br>(Filed April 16, 2025) |
| **MICHAEL LIPARULO**, on behalf of himself and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**YALE NEW HAVEN HEALTH SERVICES CORP.**,<br><br>Defendant. | Case No. 3:25-cv-00610<br><br>(Filed April 16, 2025) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM CO-LEAD CLASS COUNSEL**

Plaintiffs Jon Nathanson and Michael Liparulo (collectively, "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated (the "Class" or "Class Members"), respectfully move pursuant to Federal Rule of Civil Procedure 42(a) for an order consolidating the above-captioned matters (collectively, the "Related Actions"), and all other matters (now and in the future) naming Defendant Yale New Haven Health Services Corp. ("Defendant") as a defendant that arise from the data breach Defendant experienced in or around March 2025 (the "Data Breach").

The Related Actions arise out of the same set of facts—Defendant's massive and preventable Data Breach that reportedly exposed the confidential and highly sensitive personally identifiable information ("PII") and protected health information ("PHI") of thousands, and possibility millions, of individuals. Moreover, the Related Actions assert similar claims, on behalf of similar classes, and seek similar relief from one common defendant. Therefore, the Court should consolidate the Related Actions to maximize efficiency and judicial economy.

In addition, Plaintiffs seek the appointment of Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, Jeff Ostrow of Kopelowitz Ostrow P.A., and William B. Federman of Federman & Sherwood and as interim co-lead class counsel (collectively, "Proposed Interim Co-Lead Class Counsel"). Appointing interim co-lead class counsel is appropriate because, as demonstrated above, at least two actions have been filed, and it is likely additional cases will be filed. Appointment of interim co-lead class counsel will allow for the swift and efficient prosecution of this action and clarify the roles and responsibilities of counsel on behalf of the Class, while avoiding duplicative and unnecessary litigation that could result in efficiencies for the Court and the parties.

Accordingly, Plaintiffs respectfully request the Court grant Plaintiffs' Motion to Consolidate Cases and Appoint Interim Co-Lead Class Counsel (the "Motion") in its entirety.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The underlying litigation stems from a devastating data breach impacting thousands, and possibly millions, of individuals. According to Defendant, on or around March 11, 2025, it detected it was the target of a data security incident. After an investigation, Defendant learned its network was subject to unauthorized access. The parts of its network subject to unauthorized access stored the highly confidential information of Plaintiff and the Class, including their PII and

PHI (collectively, the "Private Information"). Upon information and belief, the victims of the Data Breach include current and former patients and employees of Defendant.

Due to Defendant's negligence in handling, storing, and maintaining Plaintiffs' and the Class's Private Information, cybercriminals obtained everything they need to wreak havoc on the financial and personal lives of Plaintiffs and the Class for years to come.

To seek redress for the harms caused by the Data Breach, Plaintiffs each filed their own class action lawsuits against Defendant stemming from the Data Breach in the Superior Court Judicial District of New Haven. After consulting with Defendant, Plaintiffs determined the federal court has jurisdiction over this matter and, accordingly, dismissed their state court actions and refiled their claims in this Court:

(1) On April 16, 2025, Plaintiff Nathanson filed his action against Defendant in the United States District Court for the District of Connecticut stemming from the Data Breach.

(2) On April 16, 2025, Plaintiff Liparulo filed his action against Defendant in the United States District Court for the District of Connecticut arising from the same Data Breach.

All the Related Actions assert overlapping causes of action, such as negligence/ negligence per se, breach of implied contract, and unjust enrichment, on behalf of the same class of individuals. Now, with multiple cases on file against Defendant, and the inevitable likelihood that more will follow, Plaintiffs seek consolidation of the Related Actions and the appointment of interim co-lead class counsel.

II. **THE RELATED ACTIONS SHOULD BE CONSOLIDATED UNDER FEDERAL RULE OF CIVIL PROCEDURE 42(a) BECAUSE THEY INVOLVE COMMON QUESTIONS OF LAW AND FACT.**

   A. **Legal Standard.**

Rule 42(a) of the Federal Rules of Civil Procedure authorizes the consolidation of cases sharing common questions of law or fact. Specifically, Rule 42(a) provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a). "Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). However "[w]hether to consolidate pending actions is a question within the discretion of the court." *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 3:17-CV-558 (SRU), 2020 WL 1181366, at *4 (D. Conn. Mar. 10, 2020) (citation omitted); *Johnson*, 899 F.2d at 1284 (A "trial court has broad discretion to determine whether consolidation is appropriate."). Consolidation under Rule 42(a) "should be prudently employed as 'a valuable and important tool of judicial administration.'" *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (citation omitted).

Here, there are both common questions of law and fact, providing two independent bases for consolidation of the Related Actions.

   B. **Common Questions of Law Predominate the Related Actions.**

The Related Actions involve duplicative questions of law, warranting consolidation. In each of the above-captioned cases, Plaintiffs seek monetary and injunctive relief for damages arising from Defendant's failure to protect Plaintiffs' and Class Members' Private Information, stemming from the Data Breach. As a result of this, each Plaintiff alleges nearly identical claims

4

against Defendant, including a combination of claims for negligence/negligence per se, breach of implied contract, and unjust enrichment. The claims found in the Related Actions will rise or fall under the same questions of law and will rely on the same evidence. Thus, the congruency between Plaintiffs' claims more than satisfies the burden of commonality and merits consolidation. *See Pule v. CareCo Shoreline, Inc.*, No. 3:19-CV-1549 (VAB), 2019 WL 13215152, at *3 (D. Conn. Nov. 21, 2019) (consolidation granted where each plaintiff alleged the same claims, against the same defendants, based on the same underlying conduct); *Kelleher v. ADVO, Inc.*, No. 3:06 CV 01422 AVC, 2007 WL 1232177, at *1 (D. Conn. Apr. 24, 2007) (consolidating cases that all alleged the same violation of federal law); *but see also In re Facebook, Inc., IPO Securities and Derivative Litig.*, 288 F.R.D. 26, 34 (S.D.N.Y. 2012) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

    **C. Common Questions of Fact Predominate the Related Actions.**

Although common questions of law are sufficient for consolidation alone, the Related Actions also share common questions of fact.

As previously mentioned, the Related Actions arise from the same factual basis—the Data Breach—which Plaintiffs allege was the result of Defendant's failure to protect Plaintiffs' and Class Members' Private Information. The Related Actions allege the same factual contentions such as, *inter alia*: (i) Defendant knowingly violated its obligations to abide by best practices and industry standards in protecting the Class's Private Information; (ii) these failures enabled a cybercriminal group to intercept, access, and acquire the Private Information Defendant collected and maintained, putting Plaintiffs' and Class Members' Private Information at a serious and

ongoing risk of harm; and (iii) Defendant failed to disclose the full extent of the Data Breach and notify the affected patients in a timely manner. The discovery and witnesses needed will be the same for each case. Thus, because Plaintiffs' claims are rooted in the same factual predicate, this provides another basis for consolidation. *See De Figueiredo v. Trans World Airlines, Inc.*, 55 F.R.D. 44, 46 (S.D.N.Y. 1971) ("It is clear that under these circumstances where both suits arise from the same operative facts, and substantially the same witnesses will testify in both cases, consolidation is particularly appropriate and will serve the purpose of trial convenience and economy in administration."); *DeSouza v. Park W. Apartments, Inc.*, No. 3:15CV1668 (MPS), 2017 WL 10926753, at *2 (D. Conn. May 22, 2017) (consolidation warranted where the cases involved common facts because the arose from the same operative facts and would involve substantially the same witnesses).

### D. Consolidation Should be Granted for the Convenience of the Parties and the Court.

Furthermore, consolidation of the Related Actions, and any future actions asserting claims against Defendant in relation to the Data Breach, is appropriate because it will simplify discovery, pretrial, class certification, and case management. Specifically, consolidation will: (i) prevent inconsistent verdicts by asserting claims in one consolidated proceeding; (ii) streamline discovery matters because Defendant will only need to respond to one set of discovery requests; (iii) save each of the parties considerable time and litigation expenses by only prosecuting one action; and (iv) promote judicial efficiency as the Court will not be required to engage in duplicative hearings or review duplicative filings. Consolidating the Related Actions will also reduce the confusion and delay that may result from prosecuting identical actions separately. Lastly, no party will be prejudiced or burdened by consolidation, but all parties involved will greatly benefit from

consolidation. As such, these additional factors further support consolidation.[1] *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-01040 (JAM), 2022 WL 1396139, at *4 (D. Conn. Mar. 29, 2022) (consolidating cases where it would "considerably advance judicial economy and reduce the burdens of litigation for all parties without causing prejudicial delay or jury confusion").

\* \* \*

Accordingly, Plaintiffs respectfully request the Court consolidate the Related Actions and any subsequently filed or transferred actions against Defendant relating to the Data Breach under the docket number of the first filed case, No. 3:25-cv-00609, and under the caption "*In re: Yale New Haven Health Services Corp. Data Breach Litigation*."

### III.   THE COURT SHOULD APPOINT INTERIM CO-LEAD CLASS COUNSEL.

Pursuant to Rule 23(g), a court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "In cases such as this, where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (citing Manual for Complex Litigation (Fourth) (hereinafter "Manual") § 21.11 (2004)). Courts considering motions to appoint interim class counsel generally consider the factors set forth in

---

[1] In numerous prior instances, litigation stemming from data breaches has proceeded in consolidated actions. *See, e.g.*, *In re Warner Music Grp. Data Breach*, No. 20 CIV. 7473 (PGG), ECF No. 34 (S.D.N.Y. Nov. 10, 2020); *In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), ECF No. 14 (S.D.N.Y. May 15, 2020); *Hamilton v. Forward Bank*, No. 23-CV-844-WMC, 2024 WL 776578 (W.D. Wis. Feb. 26, 2024); *McPherson v. Am. Bank Sys., Inc.*, No. CIV-20-1307-G, 2021 WL 932042 (W.D. Okla. Mar. 11, 2021); *Calica v. Green Diamond Res. Co.*, No. 2:24-CV-00775-LK, 2024 WL 3276416 (W.D. Wash. July 2, 2024).

Rule 23(g), which include: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. at 57 ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification.").

Each of the factors identified above are met by Mr. Klinger, Mr. Ostrow, and Mr. Federman.

### A. Proposed Interim Co-Lead Class Counsel Performed Substantial Work in Investigating this Action.

Immediately after the announcement of the Data Breach, Proposed Interim Co-Lead Class Counsel began investigating potential legal claims and remedies for the victims of the Data Breach. Those investigations included, among other things: (i) investigating the facts surrounding the Data Breach; (ii) investigating Defendant's data privacy posture; (iii) interviewing individuals injured by the Data Breach; (iv) researching legal claims; (v) drafting initial pleadings; and (vi) investigating experts in the area of data security and damages.

Additionally, Proposed Interim Co-Lead Class Counsel have worked with counsel in the Related Actions to quickly organize the management of the cases to avoid any delay that could be caused by a leadership dispute to address the merits of the case as expeditiously as possible. The work assignments will be allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating duplicity. Accordingly, the substantial work and investigation to date weighs in favor of appointing the Proposed Interim Class Counsel.

### 1. Mr. Klinger Possesses the Requisite Experience, Knowledge, Skills, and Resources to Prosecute this Action Efficiently and Effectively and is Qualified to Serve as Interim Co-Lead Class Counsel.

Gary M. Klinger is as Senior Partner at the international plaintiffs' class action law firm Milberg. Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[2] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the U.S. Supreme Court.[3] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg has more than 100 attorneys and has offices across the U.S. and the European Union.

As a Senior Partner at Milberg, Mr. Klinger has extensive experience serving as lead or co-lead counsel in numerous privacy class actions. His privacy practice includes: data breaches, ransomware attacks, unlawful collection and/or disclosure of personal information, and violations of privacy statutes and/or laws, such as the Illinois Biometric Information Privacy Act ("BIPA"), Illinois Genetic Information Privacy Act, California Consumer Privacy Act, California Medical Information Act, Telephone Consumer Protection Act, and General Data Protection Regulation.

Mr. Klinger was recognized publicly as a "trailblazer" in the privacy space. He led the way in bringing privacy class actions arising from the use of tracking technologies such as the "Meta Pixel." Mr. Klinger filed the first-ever privacy case in the healthcare setting for unlawful disclosure of private health information (*Quinto v. The Regents of the University of California*, Case No. 22-

---

[2] *See, e.g., In re Tyco Int'l Ltd., Securities Litig.*, MDL 1335 (D. N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D. N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.
[3] *See* https://milberg.com/precedent-setting-decisions/page/3/.

cv-012970). In the wake of the *Quinto* lawsuit, the Department of Health and Human Services (HHS) issued a bulletin on the requirements under HIPAA for online tracking technologies providing that "[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of ePHI to tracking technology vendors or any other violations of the HIPAA Rules." Since Mr. Klinger filed the *Quinto* lawsuit, dozens of similar lawsuits have been filed against healthcare providers by plaintiffs' class action firms across the country, numerous investigative articles have been published, and Congress even opened an inquiry into the issue.

Mr. Klinger has been appointed by state and federal courts to act as Class Counsel for millions of consumers and recovered hundreds of millions of dollars for consumers throughout the country. Presently, he is lead or co-lead counsel in more than thirty (30) active class action lawsuits pending in state and federal courts across the country. Mr. Klinger was recognized as one of the 2024 Lawdragon 500 Leading Litigators in America. He also was recognized in 2024 by Chambers as one of the leading attorneys in the United States for Privacy and Data Security Litigation. He is a Certified Information Privacy Professional (CIPP/US) and a member of the International Association of Privacy Professionals.

Mr. Klinger has settled on a class-wide basis more than seventy-five class actions involving privacy violations where he served as lead or co-lead counsel and recovered hundreds of millions of dollars in the process.

    a. For example, in *Parris, et al v. Meta Platforms, Inc.*, Case No. 2023LA000672 (Ill. 18th Jud. Cir. Ct., DuPage Cnty.), Mr. Klinger negotiated and won final approval for a $64.25 million settlement on behalf of Illinois Instagram users for biometric privacy claims. This landmark settlement is the third largest biometric privacy settlement in U.S. history.

    b. In *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021), Mr. Klinger, as appointed co-lead counsel, obtained final approval of a $17.6 million

10

      dollar settlement to resolve data breach class action claims against Kemper Corporation in a case involving more than six million class members.

  c. Mr. Klinger currently serves as appointed co-lead counsel representing more than three million class members in another major privacy class action in the Seventh Circuit, which recently settled for a $21 million non-reversionary common fund..*See In re Arthur J. Gallagher Data Breach Litig.*, No. 1:21-cv-04056 (N.D. Ill.).

  d. Mr. Klinger was appointed Co-Lead Counsel in the privacy case styled, *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.), which involves approximately one million class members and settled on a class-wide basis for $4.35 million.

  e. Mr. Klinger served as co-lead counsel in the consolidated privacy litigation styled, *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.), which involves more than 2.4 million class members and settled on a class-wide basis for $4.75 million.

Mr. Klinger and Milberg's data breach experience compare favorably with that of any law firm in the country. The firm has ample resources (both financial and personnel, with over 100+ attorneys at the firm) to fully and adequately represent the interests of the proposed class here.

Mr. Klinger graduated from the University of Illinois at Urbana-Champaign in 2007 and from the University of Illinois College of Law in 2010. A list of Mr. Klinger's Class Counsel appointments is attached as **Exhibit 1**. A copy of Milberg's firm resume is attached as **Exhibit 2**.

    **2. Ms. Ostrow Possesses the Requisite Experience, Knowledge, Skills, and Resources to Prosecute this Action Efficiently and Effectively and is Qualified to Serve as Interim Co-Lead Class Counsel.**

Jeff Ostrow is the Managing Partner of KO and has been practicing law for 27 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks,

11

commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is counsel of record in more than 200 pending data breach cases. He is currently Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people. Additional examples of other cases in which he serves as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting 2.5 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients, and *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients.

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No.

3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained

13

an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Proposed Interim Class Counsel in many other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members. A copy of Mr. Ostrow's resume, which includes additional information about Mr. Ostrow and his firm is attached as **Exhibit 3**.

> 3. **Mr. Federman Possesses the Requisite Experience, Knowledge, Skills, and Resources to Prosecute this Action Efficiently and Effectively and is Qualified to Serve as Interim Co-Lead Class Counsel.**

Mr. Federman, the founder and managing member of Federman & Sherwood, has more than 41 years of diverse, hands-on, trial and appellate experience in the areas of data breach litigation, class action litigation, financial fraud litigation, commercial litigation, and consumer litigation. Mr. Federman has represented clients in multidistrict litigation proceedings, federal courts, state courts, and arbitration forums across the United States. Indeed, Mr. Federman has litigated hundreds of class action lawsuits demonstrating he has the skill, knowledge, and experience necessary to best serve the interests of Plaintiffs and the putative classes.

Mr. Federman and Federman & Sherwood are trailblazers in the data privacy litigation sector, having prosecuted data breach cases for more than seven years, playing a pivotal role in developing key decisions that are regularly relied upon by courts and counsel across the nation. *See, e.g.*, *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (one of the first cases where class certification was achieved in the data breach context); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022); *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319

(W.D. Ky. Sept. 8, 2022); *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021). As pioneers in this field, Federman & Sherwood are well-versed in the applicable law, which makes them well-suited for efficiently preparing briefs and developing discovery.

Federman & Sherwood also has a proven track record of successful and persuasive briefing, thwarting numerous motions to dismiss in the data privacy context. *See, e.g., Carr v. Oklahoma Student Loan Auth.et al.*, No. CIV-23-99-R, 2023 WL 6929850 (W.D. Okla. Oct. 19, 2023) (motion to dismiss granted in part and denied in part against the Oklahoma Student Loan Authority); *Carr v. Oklahoma Student Loan Auth. et al.,* No. CIV-23-99-R, 2023 WL 6929853 (W.D. Okla. Oct. 19, 2023) (motion to dismiss granted in part and denied in part against Nelnet Servicing, LLC); *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-CV-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023) (motion to dismiss granted in part and denied in part); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022) (motion to dismiss denied in part and granted in part); *Fischer v. CentralSquare Techs., LLC*, No. 21-CV-60856-RAR, 2021 WL 10558134 (S.D. Fla. Sept. 16, 2021) (surviving motion to dismiss in part); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1296 (S.D. Cal. 2020) (order granting in part and denying in part the defendant's motion to dismiss). These successes make it apparent that Federman & Sherwood is an asset to the successful prosecution of this proceeding.

Due to Federman & Sherwood's early involvement in this area of law and its plethora of success, Federman & Sherwood has served as lead counsel or co-lead counsel in countless data breach lawsuits spanning across the nation, including: *In re medQ, Inc. Data Breach Litig.*, No. 4:24-cv-00176 (E.D. Tex.) (interim co-lead class counsel); *In re Brinker Data Incident Litig.*, No.

15

3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (co-lead class counsel); *Rose, et al. v. BHI Energy Services, LLC, et al.*, No. 1:23-cv-12513 (D. Mass.) (interim co-lead counsel); *Woods, et al. v. Albany ENT & Allergy Services, PC*, No. 904730 (N.Y. Sup. Ct. Albany Cnty.) (interim co-lead counsel); *Perez v. Carvin Wilson Software LLC*, No. CV-23-00792-PHX-SMM (D. Ariz.) (interim co-lead class counsel); *Bingaman, et al. v. Avem Health Partners, Inc.*, No. CIV-23-134-SLP (W.D. Okla.) (interim lead class counsel and interim liaison class counsel); *Okonski, et al. v. Progressive Casualty Insurance Company*, No. 1:23-cv-01548 (N.D. Ohio) (interim co-lead class counsel); *In re: Bryan Cave Leighton Paisner, LLP Data Breach Litigation*, No. 1:23-cv-04249 (N.D. Ill.) (interim lead class counsel); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, No. 1:22-cv-00591-TNM (D.D.C.) (co-lead settlement class counsel); *Mackey v. Belden, Inc.*, No. 4:21-cv-00149-JAR (E.D. Mo.) (co-lead settlement class counsel); *In re: Solara Medical Supplies Data Breach Litigation*, No. 3:19-cv-00284-H-KSC (S.D. Cal.) (interim co-lead class counsel); *McFarlane et al. v. Altice USA, Inc.*, Case No. 20-cv-1297 (S.D.N.Y.) (interim lead counsel); *M.S. and D.H. v. Med-Data, Inc.*, Case No. 4:22-cv-00187 (S.D. Tex.) (interim co-lead class counsel; settlement pending); *White v. Med. Rev. Inst. of Am., LLC*, No. 2:22-CV-00082-DAK-DAO (D. Utah July 22, 2022) (co-lead class counsel); *In re Snap Finance Data Breach Litig.*, No. 2:22-cv-00761-TS-JCB (D. Utah) (interim co-lead counsel); and *In re: Physician's Business Office Data Incident Litigation*, Case No. CC-54-2022-C-252 (Wood Cnty. Cir. Ct. of West Virginia) (interim co-lead class counsel). See also **Exhibit 3** (Federman & Sherwood Firm Résumé).

Not only does Federman & Sherwood possess the requisite skill, knowledge, and experience, but it also has adequate financial resources to support the litigation. Due to its success

as a prominent class action law firm, Federman & Sherwood has assisted in numerous cases, funding litigation expenses in excess of $1 million. Federman & Sherwood has both the financial resources and the staff to assist in resolving this case and does not use or rely upon third-party funding sources. Additional information regarding Mr. Federman and Federman & Sherwood is detailed in the Federman & Sherwood Firm Résumé, attached hereto as **Exhibit 4**.

Given Federman & Sherwood's vast experience and proven track record in successfully prosecuting class action data breach cases, William B. Federman of Federman & Sherwood would serve as excellent Interim Co-Lead Class Counsel.

### IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion and enter the proposed order submitted herewith consolidating the Related Actions and appointing interim co-lead class counsel.

Date: April 16, 2025

Respectfully Submitted,

By: _____
Michael J. Reilly (ct28651)
**CICCHIELLO & CICCHIELLO, LLP**
364 Franklin Avenue
Hartford, CT 06114
Tel: 860-296-3457
Fax: 860-296-3457
mreilly@cicchielloesq.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4100
ostrow@kolawyers.com

Gary M. Klinger*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Tel (405) 235-1560
wbf@federmanlaw.com

(* denotes *pro hac vice* forthcoming)

***Proposed Interim Co-Lead Class Counsel***

**CERTIFICATION OF SERVICE**

  I hereby certify that on April 16, 2025 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: _____
Michael J. Reilly (ct28651)