**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: YALE NEW HAVEN HEALTH SERVICES CORP. DATA BREACH LITIGATION. | Case No.: 3:25-cv-00609 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL ALLEGATIONS ......................................................................................... 1

III.  ARGUMENT AND AUTHORITIES ............................................................................ 6

  A.  Standard of Review .................................................................................................. 6

  B.  Plaintiffs State a Claim for Negligence. ................................................................. 6

    1.  Plaintiffs Establish Breach. ............................................................................ 6

    2.  Plaintiffs' Negligence Claim is Not Barred by the Economic Loss Doctrine. .............. 9

    3.  Plaintiffs State a Claim for Negligence *Per Se.* .......................................... 12

  C.  Plaintiffs State a Claim for Breach of Implied Contract ....................................... 14

    1.  Plaintiffs Adequately Allege the Existence of an Implied Contract Between the Parties.
        ……………………………………………………………………………………14

    2.  The Exchange of Private Information for Services Constitutes Valid Consideration. . 17

  D.  Plaintiffs' Unjust Enrichment Claim is Adequately Stated. ............................... 18

    1.  Connecticut Law Permits Pleading Unjust Enrichment in the Alternative .................. 19

    2.  Plaintiffs Adequately Allege the Elements of Unjust Enrichment. ............................. 19

  E.  Plaintiffs State a Claim for Breach of Fiduciary Duty ......................................... 22

  F.  Plaintiffs Sufficiently State a Claim for Declaratory Judgment. ....................... 25

IV.  CONCLUSION ............................................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ................................................................................... 6

*Austin-Spearman v. AARP and AARP Servs., Inc.*,

119 F. Supp. 3d 1 (D.D.C. 2015) ............................................................... 16

*Bagwell v. World Wrestling Ent., Inc.*,

No. 3:16-CV-1350 (JCH), 2017 WL 3579609 (D. Conn. May 5, 2017) ........................... 19

*Barash v. Lembo*,

348 Conn. 264, 303 A.3d 577 (2023) ........................................................... 23, 24

*Baton v. Ledger SAS*,

740 F. Supp. 3d 847 (N.D. Cal. 2024) ......................................................... 9

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007) ................................................................................... 6

*Bowen v. Paxton Media Grp., LLC,*

No. 5:21-CV-00143-GNS, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) ........................... 21

*Byrne v. Avery Center for Obstetrics & Gynecology, P.C.*,

327 Conn. 540, 175 A.3d 1 (2018) ............................................................... 22, 23

*Capiau v. Ascendum Machinery, Inc.*,

No. 3:24-cv-00142- MOC-SCR, 2024 WL 3747191 (W.D.N.C. Aug. 9, 2024) ................. 14

*Charlie v. Rehoboth McKinley Christian Health Care Servs.*,

598 F. Supp. 3d 1145 (D.N.M. 2022) ........................................................... 14

*Clinton v. Aspinwall*,

    344 Conn. 696, 281 A.3d 1174 (2022) ............................................................. 24

*Coastline Terminals of Connecticut, Inc. v. USX Corp.*,

    156 F. Supp. 2d 203 (D. Conn. 2001) ............................................................. 13

*Cohen v. Ne. Radiology, P.C.*,

    No. 20-cv-1202, 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ............................ 17

*Connecticut Light & Power Co. v. Proctor*,

    324 Conn. 245, 152 A.3d 470 (2016) ............................................................. 15

*Farmer v. Humana, Inc.*,

    582 F. Supp. 3d 1176 (M.D. Fla. 2022) ...................................................... 8, 18

*Flagg Energy Development Corp. v. General Motors Corp.*,

    244 Conn. 126, 709 A.2d 1075 (1998) ............................................................. 10

*Flores-Mendez v. Zoosk, Inc.*,

    No. C-20-04929 WHA, 2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ................. 9

*Gmurzynska v. Hutton*,

    355 F.3d 206 (2d Cir. 2004) .............................................................................. 7

*Gordon v. Zeroed-In Tech., LLC*,

    No. 23-3284-BAH, 2025 WL 936415 (D. Md. Mar. 26, 2025) ..................... 11, 12

*Grayson v. Imagination Station, Inc.*,

    No. Civ. A. 5051-CC, 2010 WL 3221951 (Del. Ch. Aug. 16, 2010) ................. 24

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,

    231 Conn. 276, 649 A.2d 518 (1994) ............................................................. 20

*Hernandez v. United States*,

939 F.3d 191 (2d Cir. 2019) .............................................................................. 6

*In re Accellion, Inc. Data Breach Litig.*,

713 F. Supp. 3d 623 (N.D. Cal. 2024) ................................................................ 9

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,

No. CV-19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ..................... 7

*In re Arthur J. Gallagher Data Breach Litig.*,

631 F. Supp.3d 573 (N.D. Ill. 2022) ................................................................. 11

*In re Capital One Consumer Data Sec. Breach Litig,*

488 F. Supp. 3d 374 (E.D. Va. 2020) .......................................................... 21, 26

*In re Equifax Inc., Customer Data Sec. Breach Litig.*,

362 F. Supp. 3d 1295 (N.D. Ga. 2019) ........................................................ 14, 21

*In re GE/CBPS Data Breach Litig.*,

20 CIV. 2903 (KPF), 2021 WL 3406374, at *8 (S.D.N.Y. Aug. 4, 2021) ........... 8

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,

2020 WL 6290670 (D. Md. Oct. 27, 2020) ......................................................... 8

*In re MF Global Holdings Ltd. Inv. Litig.*,

998 F. Supp. 2d 157 (S.D.N.Y. 2014), *aff'd*, 611 F.App'x 34 (2d Cir. 2015) ..... 10

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,

198 F. Supp. 3d 1183 (D. Or. 2016) ................................................................. 22

*In re Rutter's Inc. Data Sec. Breach Litig.*,

511 F. Supp. 3d 514 (M.D. Pa. 2021) ............................................................... 22

*In re Shields Health Grp., Inc. Data Breach Litig.*,

721 F. Supp. 3d 152 (D. Mass. Mar. 5, 2024) .................................................. 23

*In re Target Corp. Data Sec. Breach Litig.*,

    66 F. Supp. 3d 1154 (D. Minn. 2014) ................................................................. 22

*In re Unite Here Data Sec. Incident Litig.*,

    740 F. Supp. 3d 364, 383 (S.D.N.Y. 2024) ............................................. 8, 16, 21

*In re USAA Data Sec. Litig.*,

    621 F. Supp. 3d 454 (S.D.N.Y. 2022) ................................................................ 26

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

    313 F. Supp. 3d 1113 (N.D. Cal. 2018) .............................................................. 26

*Janusauskas v. Fichman*,

    264 Conn. 796, 826 A.2d 1066 (2003) .............................................................. 15

*Johnson v. Nice Pak Prods., Inc.*,

    736 F. Supp.3d 639 (S.D. Ind. 2024) ................................................................. 12

*Jones v. Sturm, Ruger & Company, Inc.*,

    No. 3:22-cv-1233 (KAD), 2024 WL 1307148 (D. Conn. Mar. 27, 2024) .............. 12, 17, 18

*Kirsten v. California Pizza Kitchen, Inc.*,

    No. 221CV09578DOCKES, 2022 WL 16894503 (C.D. Cal. July 29, 2022) ..................... 14

*Maio v. TD Bank, N.A.*,

    2023 WL 2465799 (D. Mass. Mar. 10, 2023) ..................................................... 11

*Mehta v. Robinhood Fin. LLC*,

    No. 21-CV-01013, 2021 WL 6882377 (N.D. Cal. May 6, 2021) ........................ 11

*Miller v. NextGen Healthcare, Inc.*,

    742 F. Supp.3d 1304 (N.D. Ga. 2024) ............................................................... 23

*Miller v. Syracuse Univ.*,

662 F. Supp. 3d 338 (N.D.N.Y. 2023) .................................................................. 26

*Opris v. Sincera Reprod. Med.*,

    No. CV 21-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) ........................ 7, 8

*Orthman v. Premiere Pediatrics, PLLC*,

    2024 OK CIV APP 7, 545 P.3d 124 .................................................................. 24

*Perdue v. Hy-Vee, Inc.*,

    455 F. Supp. 3d 749 (C.D. Ill. 2020) ............................................................... 14

*Perry v. Bay & Bay Transp. Servs.*,

    650 F. Supp. 3d 743 (D. Minn. 2023) .............................................................. 18

*Purvis v. Aveanna Healthcare*,

    563 F. Supp. 3d 1360 (N.D. Ga. 2021) ..................................................... 9, 23, 24

*Ramirez v. Paradies Shops, LLC*,

    69 F.4th 1213 (11th Cir. 2023) ......................................................................... 9

*Rand v. Travelers Indem. Co.*,

    637 F. Supp. 3d 55 (S.D.N.Y. 2022) ................................................................ 25

*Rent-A-PC, Inc. v. Rental Mgmt., Inc.*,

    96 Conn. App. 600 (2006) ............................................................................... 21

*Resnick v. AvMed, Inc.*,

    693 F.3d 1317 (11th Cir. 2012) ....................................................................... 22

*Rodriguez v. Mena Hosp. Comm'n*,

    No. 2:23-cv-2002, 2023 WL 7198441 (W.D. Ark. Nov. 1, 2023) ..................... 18

*Rudolph v. Hudson's Bay Co.*,

    2019 WL 2023713 (S.D.N.Y. May 7, 2019) .................................................... 21

*Sackin v. TransPerfect Glob., Inc.*,

    278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) .................................................. 8, 17, 21

*Shaulis v. Nordstrom, Inc.*

    865 F.3d 1 (1st Cir. 2017). ................................................................... 19

*Smallman v. MGM Resorts Int'l.*,

    638 F. Supp.3d 1175 (D. Nev. 2022) .................................................... 11

*Stasi v. Inmediata Health Group Corp.*,

    501 F. Supp.3d 898 (S.D. Cal. 2020) .................................................... 12

*Stein v. Horton*,

    914 A.2d 606 (Conn. App. 2007) ......................................................... 19

*Stein v. Tong*,

    117 Conn. App. 19, 979 A.2d 494 (2009) ............................................. 6

*Timmons v. City of Hartford*,

    283 F. Supp. 2d 712 (D. Conn. 2003) .................................................. 15

*Trahan v. Lazar*,

    457 F. Supp.3d 323 (S.D.N.Y. 2020) .................................................... 25

*Uddo v. DeLuca*,

    425 F. Supp.3d 138 (E.D.N.Y. 2019) ................................................... 25

*Ulbrich v. Groth*,

    310 Conn. 375, 78 A.3d 76 (2013) ....................................................... 10

*United Coastal Indus. v. Cleartheart Constr. Co., Inc.*,

    802 A.2d 901 (Conn. App. 2002) ......................................................... 19

*Vengalattore v. Cornell Univ.*,

36 F.4th 87 (2d Cir. 2022) ................................................................ 6

*Vertex, Inc. v. City of Waterbury*,

278 Conn. 557, 898 A.2d 178 (2006) ............................................... 15

*Walker v. Barrett*,

No. CV990169673, 1999 Conn. 1999 WL 1063189 (Conn. Super. Ct. Nov. 8, 1999) ....... 13

*Wallace v. Health Quest Sys., Inc.*,

No. 20 CV 545 (VB), 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) .................... 10, 15, 21

*Webb v. Injured Workers Pharmacy, LLC*,

No. 22-CV-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023) ..................................... 11

*Whitfield v. ATC Healthcare Servs.*, LLC,

2023 U.S. Dist. LEXIS 147602 (E.D.N.Y. 2023) .............................................. 17

*Zurich American Life Ins. Co. v. Nagel*,

538 F. Supp. 3d 396 (S.D.N.Y. 2021) ................................................ 24

**Rules**

Fed. R. Civ. P. 12 ........................................................................... 6

Fed. R. Civ. P. 8 ........................................................................ 7, 19

# I.   INTRODUCTION

Yale New Haven Health Services Corporation ("Yale" or "Defendant") failed to safeguard and protect the highly sensitive personal information entrusted to it by Plaintiffs and the proposed class (the "Class" or "Class Members"), resulting in a massive and preventable data breach (the "Data Breach" or "Breach"). During the Data Breach, cybercriminals ***stole*** Plaintiffs' and approximately 5.6 million Class Members' personally identifiable information ("PII") and protected health information ("PHI"), including their full names, dates of birth, addresses, telephone numbers, email addresses, race or ethnicity, Social Security numbers, patient types, and medical record numbers (collectively, "Private Information"), causing widespread damages to Plaintiffs and the Class. Despite inflicting various injuries upon Plaintiffs and the Class, Defendant now seeks to dismiss Plaintiffs' claims based on outdated arguments that run contrary to well-established case law in Connecticut, the Second Circuit, and across the United States. For these reasons, Defendant's Motion to Dismiss ("MTD") (ECF No. 61) is due to be denied in its entirety.

# II.   FACTUAL ALLEGATIONS

Yale is a healthcare system with multiple hospitals, multispecialty centers, outpatient locations, and ambulatory sites stretching from Westchester County, New York, to Westerly, Rhode Island. (Consolidated Class Action Complaint ("Compl."), ¶ 2, ECF No. 54). Plaintiffs and Class Members are Yale's current and former patients and/or the parents or guardians of Yale's current or former minor patients, who received healthcare services from Defendant prior to March 2025. (*Id.* ¶ 40). As a condition of and in exchange for receiving healthcare services from Defendant, Plaintiffs and Class Members were required to entrust Defendant with their highly sensitive Private Information. (*Id.* ¶ 41). In return, Defendant promised to provide adequate data security, which is evidenced through its privacy policy that explicitly states Yale is "committed to

protecting medical information" and is required by law to keep medical information private, provide notice of its legal duties and privacy practices, and follow the terms of its privacy notice. (*Id.* ¶ 42). Plaintiffs and Class Members relied on Yale's promises to: (i) implement reasonable data security practices to keep their Private Information confidential and securely maintained; (ii) use their Private Information for necessary purposes only; (iii) make only authorized disclosures of their Private Information; and (iv) delete their Private Information from Defendant's systems when no longer necessary for legitimate business or healthcare purposes. (*Id.* ¶ 43). Despite these assurances, Defendant failed to employ adequate data security, culminating in the Data Breach that ultimately came to pass.

On March 11, 2025, Yale posted a statement on its website, claiming it became aware of the Data Breach on March 8, 2025, after it noticed unusual activity affecting its Information Technology ("IT") systems. (*Id.* ¶¶ 45–46). After an investigation, Yale discovered an unauthorized third-party gained access to its network on March 8, 2025, and ***stole*** Plaintiffs' and Class Members' Private Information, including their names, dates of birth, addresses, telephone numbers, email addresses, race or ethnicity, Social Security numbers, patient types, and/or medical record numbers. (*Id.* ¶ 47). Yale's systems were an easy target for a data breach such as this because Yale stored its patients' Private Information in a way that left it "unencrypted and vulnerable to access and exfiltration by unauthorized individuals." (*Id.*). As a result of Yale's negligent data security, 5.6 million patients are now at a substantial and imminent risk of identity theft and fraud because their sensitive Private Information (including their Social Security numbers) was ***stolen*** in a targeted data breach. (*Id.* ¶ 53). Yale admitted as much by recommending that Plaintiffs and Class Members immediately review their financial account statements and credit

reports for any unauthorized activity and by offering them limited credit monitoring services. (*Id.* ¶¶ 51–52).

Yale was fully aware that healthcare entities—such as itself—are at an exceptionally high risk of data breaches due to the highly publicized nature of many similar data breaches permeating the healthcare industry and the sensitive Private Information they store but took no measures to secure. (*Id.* ¶¶ 56–57). Indeed, in a public statement made last year, Yale's Chief Digital Health Officer specifically recognized that cybercriminals were becoming increasingly proficient at attacking health systems. (*Id.* ¶ 7). The healthcare industry is known to be susceptible to data breaches and boasted the second highest number of data breaches in 2024. (*Id.* ¶¶ 59, 71). This is because the Private Information stolen in healthcare data breaches such as this can lead not only to identity theft and financial fraud, but also to medical identity theft and fraud. (*Id.*). Specifically, with stolen healthcare information, scammers can "get medical services, use your data to open credit accounts, break into your bank accounts, illegally obtain drugs, and even blackmail you with sensitive personal details." (*Id.*). Both Social Security numbers and medical records are highly valuable, with the latter selling for up to $1,000.00 on the black market. (*Id.* ¶¶ 70, 72). As such, it is clear Yale's Data Breach has real, lifelong consequences for the victims.

Plaintiffs allege that Defendant's duties to protect their Private Information and provide proper notice of the Data Breach is derived from several sources, including contracts, industry standards, common law, HIPAA regulations, the FTC Act, the Connecticut Data Privacy Act, and Yale's own promises and representations to keep patients' Private Information secure from unauthorized access and disclosure. (*Id.* ¶ 49). Plaintiffs further allege the specific ways in which Yale breached its duties. To start, Plaintiffs allege that Defendant intentionally refused to implement adequate data security because of the asserted "'trade-off' between 'security and

productivity.'" (*Id.* ¶ 76). Next, Plaintiffs allege that Defendant refused to delete or move Private Information it no longer needed, despite knowing proper record retention practices are essential for reasonable data security. (*Id.* ¶ 77). Further, Plaintiffs allege that Defendant failed to encrypt Plaintiffs' and Class Members' Private Information as recommended by Connecticut's Office of Legislative Research, and instead stored the data in plain text, making it easily accessible to cybercriminals. (*Id.* ¶¶ 78, 104). Defendant also failed to take the many other reasonable actions recommended by the FTC Act, including requiring "complex passwords to be used on networks; use industry-tested methods for security; monitor all networks for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures." (*Id.* ¶ 85). Finally, Defendant violated HIPAA and HITECH by failing to: detect and prevent unauthorized access to its patients' medical information, implement policies limiting access to PHI, and train its staff on proper data security measures. (*Id.* ¶¶ 96–98 (citing 45 C.F.R. § 164.306; 42 U.S.C. §17921; 45 C.F.R. § 160.103)).

Because of Yale's wrongful conduct, Plaintiffs and Class Members have suffered numerous concrete injuries, including: (i) theft of their Private Information; (ii) an imminent threat of identity theft and fraud (especially considering multiple Plaintiffs' Private Information has already been misused as a result of the Data Breach); (iii) lost time from taking preventative actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions to remedy fraudulent transactions, changing passwords, reviewing and monitoring credit reports and statements for unauthorized activity, and filing police reports; (iv) lost value and privacy in their Private Information; (v) present and future out-of-pocket costs for credit monitoring and identity theft protection; and (vi) loss of the benefit of the bargain that Defendant would provide reasonable data security as part of its services. (*Id.* ¶¶ 132, 142, 148, 150).

Specifically, Plaintiffs have suffered stress and anxiety over the theft and impending misuse of their Private Information, and each has been forced to spend several hours addressing and mitigating the harms suffered from the Data Breach by, *inter alia*, researching facts about the Data Breach, thoroughly reviewing their account statements and other information, responding to and blocking spam calls and text messages, researching ways to mitigate the harmful effects of the Data Breach, changing their sensitive information and IP address, and changing their passwords. (*Id.* ¶¶ 161–62, 173–74, 185–86, 197–98, 209–10, 222–23, 234–35, 246–47, 258–59, 270–71, 282–83, 294–95, 306–07, 319–20, 344–45, 355–56, 367–68, 379–80).

Additionally, multiple Plaintiffs have already suffered actual misuse of their Private Information as a result of the Data Breach. For example, Plaintiff Wilson's Private Information has been exposed on the dark web and already misused because the card she used to pay for Yale's medical services was fraudulently used soon after the Data Breach. (*Id.* ¶ 182). Since April 2025, Plaintiff Snitkoff has been bombarded with more spam calls and texts than he has ever experienced before, and he also received a medical bill for a charge he does not recognize that he will now have to resolve. (*Id.* ¶¶ 206–07). Plaintiff Krantz' minor children's Private Information is now on the dark web. (*Id.* ¶ 243). Plaintiff Hudson's Private Information is also on the dark web, and he experienced two (2) fraudulent charges on his credit card for $1,000.00 each since the Data Breach, as well as an increase in spam calls and texts. (*Id.* ¶¶ 255–56). Plaintiff Taylor-Austin also experienced increased spam calls and texts and fraudulent charges made on her card for approximately $1,000.00. (*Id.* ¶ 280). Further, Plaintiff Berger enrolled in credit monitoring as a result of the Data Breach, which costs him $21.99 per month. (*Id.* ¶ 307). After the Data Breach, Plaintiff Taylor discovered false credit applications in his name which he had to address, and he has also experienced suspicious spam calls and texts and has learned that this Private Information

was found on the dark web. (*Id.* ¶ 365). As clearly demonstrated by the foregoing, Plaintiffs and the Class are imminently at risk of identity theft and fraud. (*See id.* ¶¶ 184, 281, 293, 343, 354, 378). Yale must be held accountable for its negligence to prevent another egregious Breach such as this from occurring in the future.

## III.    ARGUMENT AND AUTHORITIES

### A.    Standard of Review.

When considering a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a court must first accept as true all factual matters alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A complaint should not be dismissed if the plaintiffs state plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022). Although a complaint "does not need detailed factual allegations," it must contain "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).

### B.    Plaintiffs State a Claim for Negligence.

#### 1.    Plaintiffs Establish Breach.

To state a claim for negligence, plaintiffs must allege "duty; breach of that duty; causation; and actual injury." *Stein v. Tong*, 117 Conn. App. 19, 27, 979 A.2d 494 (2009). Defendant does not dispute it owed duties of care to Plaintiffs and Class Members; instead, Defendant merely argues Plaintiffs fail to plead a breach of those duties because their allegations are "conclusory." (*See* MTD at p. 4). By challenging the sufficiency of Plaintiffs' pleadings regarding Defendant's breach, Defendant seeks to apply an erroneously heightened pleading standard. Under the federal

rules, "a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gmurzynska v. Hutton*, 355 F.3d 206, 208–09 (2d Cir. 2004) (internal citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). A short and plain statement "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (internal citation omitted). Courts recognize that, "[w]hile the existence of a duty is a question of law, the issue of whether a defendant breached that duty is typically reserved for the factfinder," and thus, at the motion to dismiss stage, "[a] factual determination of whether Defendant's various actions violated their duty to reasonably safeguard Plaintiffs' Personal Information is premature." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV-19-MD-2904, 2021 WL 5937742, at *15 (D.N.J. Dec. 16, 2021); *see also Opris v. Sincera Reprod. Med.*, No. CV 21-3072, 2022 WL 1639417, at *5 (E.D. Pa. May 24, 2022) (same).

Nonetheless, contrary to Defendant's argument that Plaintiffs allegedly fail to plead how Defendant breached its duties, Plaintiffs allege many specific ways in which Defendant breached its duties to Plaintiffs and the Class. Specifically, Plaintiffs allege Defendant breached its duties by: (i) failing to enhance its data security measures; (ii) failing to delete Private Information once it was no longer needed; (iii) failing to encrypt Private Information; (iv) failing to require complex passwords; (v) failing to prevent unauthorized access to the Private Information; and (v) failing to provide prompt, individual notice to Plaintiffs and the Class Members of the Data Breach. (*See* Compl., ¶¶ 54–55, 76–78, 85, 96–98, 104, 126). These allegations are more than enough to plead breach and stand in stark contrast to the unpublished, unpersuasive decisions Defendant cites in its motion. Defendant's entire argument on this point grossly misstates the Consolidated Complaint's allegations by inaccurately reducing them to failure to comply "with industry-standard data

security practices." (*Id.* ¶ 8). As demonstrated by the above, Plaintiffs plainly plead much more than that.

Courts considering similar allegations in data breach cases have repeatedly denied motions to dismiss negligence claims. *See, e.g.*, *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 383 (S.D.N.Y. 2024), *motion to certify appeal denied*, No. 24-CV-1565 (JSR), 2024 WL 4307975 (S.D.N.Y. Sept. 26, 2024) (finding similar allegations " are more than sufficient to state a claim under Rule 8(a)'s minimal pleading standard); *Opris*, 2022 WL 1639417, at *5 (assertions that "data breach was a 'direct result of Sincera's failure to implement and follow basic security procedures, and its failure to follow its own policies," were found to be sufficient at the motion to dismiss stage); *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1186 (M.D. Fla. 2022) (allegations "that Defendants (i) 'failed to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information and PHI of Farmer,' and (ii) 'failed to heed industry warnings and alerts to provide adequate safeguards to protect' the Private Information and PHI" adequate); *In re Marriott International, Inc., Customer Data Security Breach Litigation*, 2020 WL 6290670, at *15–18, 21 (D. Md. Oct. 27, 2020) (permitting negligence and negligence *per se* claims under Connecticut law in a data breach case); *In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *8 (S.D.N.Y. Aug. 4, 2021) (finding "allegations sufficient to sustain a negligence claim" where plaintiffs alleged that the defendants failed to implement "appropriate data security processes. . . despite a reasonably foreseeable risk that such failure 'would result in the unauthorized release, disclosure, and dissemination of [Plaintiff's] and Class members' personal and financial information'"); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) (plaintiffs sufficiently pleaded breach by alleging that the defendant "was aware of the sensitivity of PII and the need to protect it" but "failed to take

reasonable steps to prevent the wrongful dissemination of Plaintiffs' PII"); *Purvis v. Aveanna Healthcare*, 563 F. Supp. 3d 1360, 1371 (N.D. Ga. 2021) (concluding the "reasonable inference is that Defendant did not implement reasonable data security measures" and permitting negligence claim in data breach case).[1]

Moreover, Plaintiffs' allegations exceed what courts typically require in data breach cases, which "present unique challenges for plaintiffs at the pleading stage" because a plaintiff "may know only what the company has disclosed in its notice of a data breach." *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023); *see also Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 908–09 (N.D. Cal. 2024) ("There would be no way for users to know what security steps were actually in place.") (citation omitted). Therefore, courts "cannot expect a plaintiff . . . to plead with exacting detail every aspect of [a defendant's] security history and procedures . . . ." *Ramirez*, 69 F.4th at 1220; *Baton*, 740 F. Supp. 3d at 909 ("[W]hen a breach occurs, *the thing speaks for itself.* The breach would not have occurred but for inadequate security measures, or so it can be reasonably inferred at the pleadings stage.") (emphasis in original) (citation omitted). The Court should follow these cases and hold that Plaintiffs have adequately alleged a breach of duty.

### 2. Plaintiffs' Negligence Claim is Not Barred by the Economic Loss Doctrine.

Despite arguing there is no enforceable contract between the parties (MTD at p. 11), Defendant argues Plaintiffs' negligence claim is barred by the economic loss doctrine. Under

---

[1] Even accepting Defendant's position as true, the idea that the existence of a breach is proof of inadequate security measures is a developing theory among federal courts considering data breach cases. *See, e.g., In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 636–67 (N.D. Cal. 2024), *reconsideration denied*, No. 21-CV-01155-EJD, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) (noting growing "support for the proposition that, where a data breach has occurred, the breach itself is sufficient to allege a breach of duty") (citing *Flores-Mendez v. Zoosk, Inc.*, No. C-20-04929 WHA, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021)).

9

Connecticut law, the economic loss doctrine "bars tort claims that arise out of and are dependent on the contractual relationship between the parties." *Ulbrich v. Groth*, 310 Conn. 375, 404, 78 A.3d 76 (2013) (citing *Flagg Energy Development Corp. v. General Motors Corp.*, 244 Conn. 126, 153, 709 A.2d 1075 (1998)). Thus, by definition, there must ***first*** be a valid contract before the economic loss rule applies. Yet here, Defendant vehemently argues no valid contract exists between the parties and, even if one did, such a contract lacks consideration because Defendant already owed a pre-existing duty to protect Plaintiffs' and Class Members' Private Information. (MTD at p. 11). This proves fatal to Defendant's argument and, at the very least, demonstrates why it is premature for the Court to dismiss Plaintiffs' negligence claim as discovery is needed to determine the source and extent of the duties owed by Defendant. *See Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *9 (S.D.N.Y. Mar. 23, 2021) (rejecting application of the economic loss doctrine and finding defendant's arguments to be "self-defeating" because "[n]ot only does defendant argue plaintiffs fail to allege the existence of a contract (which by itself would make the economic loss doctrine inapplicable), but it also acknowledges it has "pre-existing legal duties to" ensure the security of plaintiffs' Private Information.").

Nonetheless, even if a contract exists between Plaintiffs and Defendant, which Plaintiffs allege does exist, the economic loss doctrine still does not bar Plaintiffs' negligence claim. As outlined above, Plaintiffs allege that the duties underlying their negligence claim are independent of and distinct from any obligations arising under the implied contracts. (*See* Compl., ¶ 395 (duty arising under the common law), ¶ 398 (duty arising under Section 5 of the FTC Act), ¶ 405 (duty arising under the Connecticut Data Privacy Act (CTDPA), ¶ 410 (duty arising under HIPAA)); *see also In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 185 (S.D.N.Y. 2014), *aff'd*, 611 F.App'x 34 (2d Cir. 2015) (finding economic loss doctrine did not apply where "[r]egulations

created a separate legal duty owed by [defendants] to the [plaintiffs], apart from any contract between the [plaintiffs] and [defendants].").

The next component needed to apply the economic loss doctrine requires that the plaintiff allege purely economic damages. Here, Plaintiffs do not allege purely economic losses. Indeed, Plaintiffs allege multiple non-economic harms resulting from the Data Breach, including stress and anxiety, loss of privacy, loss of time, and loss of control over their Private Information. (Compl., ¶¶ 161, 174, 186, 198, 210, 223, 235, 247, 259, 271, 283, 295, 308, 320, 332, 345, 356, 368, 380, 415). Indeed, numerous courts have classified these exact harms as non-economic injuries, thereby making the economic loss doctrine inapplicable. *See e.g.*, *Gordon v. Zeroed-In Tech., LLC*, No. 23-3284-BAH, 2025 WL 936415, at *11 (D. Md. Mar. 26, 2025) (finding the economic loss doctrine did not bar plaintiffs' negligence claims where plaintiffs alleged non-economic harm, including loss of privacy, loss of time, and loss of control over PII); *Webb v. Injured Workers Pharmacy, LLC*, No. 22-CV-10797, 2023 WL 5938606, at *3 (D. Mass. Sept. 12, 2023) ("plaintiffs have alleged sufficient non-monetary harm, including palpable emotional distress, sufficient to satisfy the "personal injury" exception to the economic loss doctrine"); *Maio v. TD Bank, N.A.*, 2023 WL 2465799, at *4 (D. Mass. Mar. 10, 2023) (allegations of "lost sleep, anxiety, and depression" were sufficient to overcome motion to dismiss negligence claim on economic loss doctrine grounds); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp.3d 573, 587 (N.D. Ill. 2022) (finding "emotional harms such as anxiety and increased concern for the loss of privacy" to be non-economic damages); *Mehta v. Robinhood Fin. LLC*, No. 21-CV-01013, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021) (finding plaintiffs alleged non-economic harms where they alleged they lost control over the use of their identity as a result of the data breach); *Smallman v. MGM Resorts Int'l.*, 638 F. Supp.3d 1175, 1188 (D. Nev. 2022) (finding allegations

that "an individual's loss of control over the use of their identity due to a data breach and the accompanying impairment in value of PII constitutes non-economic harms."). This serves as a further basis for rejecting Defendant's economic loss argument.

Defendant relies on *Jones v. Sturm, Ruger & Company, Inc.*, No. 3:22-cv-1233 (KAD), 2024 WL 1307148 (D. Conn. Mar. 27, 2024), to support its argument that Plaintiffs allegedly failed to suffer non-economic harms. However, *Jones* is distinguishable. Notably, *Jones* neither addresses nor forecloses the fact that Plaintiffs' lost time constitutes non-economic harm, making the economic loss doctrine inapplicable. Courts around the country have refused to apply the economic loss doctrine because plaintiffs' lost time and effort qualify as non-economic harm. *See Stasi v. Inmediata Health Group Corp.*, 501 F. Supp.3d 898, 913 (S.D. Cal. 2020) ("[T]ime spent responding to a data breach is a non-economic injury, that when alleged to support a negligence claim, defeats an economic loss doctrine argument.")[2]; *Gordon*, 2025 WL 936415 at *6; *Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp.3d 639, 648 (S.D. Ind. 2024) (refusing to apply the economic loss rule where "at least some of the harms experienced by the [p]laintiffs are not solely economic, such as lost time and worry."). Therefore, Plaintiffs' negligence claim is not barred by the economic loss doctrine.

### 3. Plaintiffs State a Claim for Negligence *Per Se*.

---

[2] In *Stasi*, the court distinguished between lost time and effort as a non-economic injury and the *costs* of their lost time and productivity, which are economic damages triggering the application of the economic loss doctrine. Specifically, the court in *Stasi* held plaintiffs' allegations of lost time qualified as non-economic injuries because, as in this case, "the compromised information…includes medical information, the disclosure of which leads to damages that are not necessarily as "economic" as those resulting from the theft of credit card information and social security numbers." *Stasi*, 501 F. Supp.3d at 913. Like the plaintiffs in *Stasi*, Plaintiffs here allege the theft of their ***protected health information*** in the Data Breach and claim to have suffered lost time and effort as a direct result. (Compl., ¶ 13).

To state a claim for negligence *per se*, Plaintiffs must allege that the Plaintiffs were within the class of persons whom the statutes were designed to protect, and the harm suffered was the type of harm the statutes were designed to prevent. *Coastline Terminals of Connecticut, Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 210 (D. Conn. 2001). Defendant argues that Plaintiffs' negligence *per se* claim should be dismissed for one reason only: the FTC Act, HIPAA, and the Connecticut Data Privacy Act ("CTDPA"), which serve as the predicates for Plaintiffs' negligence *per se* claim, do not provide for private rights of action. However, it is well-established that the statutory basis for a negligence *per se* claim need not provide for a private right of action. *Coastline Terminals of Connecticut, Inc.*, 156 F. Supp. 2d at 210 (citing *Walker v. Barrett*, No. CV990169673, 1999 Conn. Super. LEXIS 3030, 1999 WL 1063189 (Conn. Super. Ct. Nov. 8, 1999)).

Here, Plaintiffs adequately allege that Defendant violated Section 5 of the FTC Act by failing to use reasonable data security measures to protect the Private Information stolen in the Data Breach and by not complying with the industry standards. (Compl., ¶ 399). Similarly, Plaintiffs allege that Defendant violated the CTDPA and HIPAA by failing to employ reasonable cybersecurity practices to prevent unauthorized access or theft of Plaintiffs' and the Class's Private Information. (*Id.* ¶¶ 406, 411). For all three (3) of these statutes, Plaintiffs allege that Plaintiffs and Class Members are within the class of persons the statutes were intended to protect (*Id.* ¶¶ 400, 407, 412), and the harm that occurred as a result of Defendant's conduct is the type of harm that the statutes were intended to guard against. (*Id.* ¶¶ 402, 409, 414). These allegations alone are sufficient to establish a negligence *per se* claim.

Unsurprisingly, Defendant purposely ignores the wide expense of data breach case law that has allowed negligence *per se* claims to proceed past the motion to dismiss stage, even when the

underlying statute does not provide a private right of action. *See, e.g.*, *In re Equifax Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019) (finding the plaintiffs' complaint "adequately pleads a violation of Section 5 of the FTCA, that the Plaintiffs are within the class of persons intended to be protected by the statute, and that the harm suffered is the kind the statute meant to protect."); *In re Marriott Int'l, Inc.*, No. 19-md-2879, 2020 U.S. Dist. LEXIS 200096, *113 (D. Md. Oct. 26, 2020) (finding that the FTC Act can serve as the basis for a negligence *per se* claim under Connecticut law); *Capiau v. Ascendum Machinery, Inc.*, No. 3:24-cv-00142- MOC-SCR, 2024 WL 3747191, at *10 (W.D.N.C. Aug. 9, 2024) (upholding negligence *per se* claim, and finding it did "not require a private right of action under the FTC Act"); *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145, 1152 (D.N.M. 2022) (recognizing that courts "have allowed negligence and negligence per se claims to proceed based upon the standards of conduct set forth in both Section 5 of the FTC Act and in HIPAA"); *Perdue v. Hy-Vee, Inc.,* 455 F. Supp. 3d 749, 760–61 (C.D. Ill. 2020) ("[T]he FTC Act can serve as the basis of a negligence per se claim" in a data breach case); *Kirsten v. California Pizza Kitchen, Inc.*, No. 221CV09578DOCKES, 2022 WL 16894503, at *9 (C.D. Cal. July 29, 2022) (finding that Plaintiffs have plausibly alleged that Defendant violated the FTC Act and denying the motion to dismiss as to the negligence *per se* claim).

Accordingly, Plaintiffs have stated a claim for negligence *per se* based on Yale's violations of the FTC Act, HIPAA, and the CTDPA. These statutes establish specific standards of conduct aimed at protecting individuals like Plaintiffs from precisely the kind of harm alleged.

## C.  Plaintiffs State a Claim for Breach of Implied Contract.

### 1.  Plaintiffs Adequately Allege the Existence of an Implied Contract Between the Parties.

14

Defendant's argument for dismissal of Plaintiffs' breach of implied contract claim is easily defeated. First, Defendant argues that Plaintiffs have not identified any express promise guaranteeing data security and do not allege "the specific provision of the Notice of Privacy Practices that Yale allegedly violated." (MTD at p. 11). However, this confuses the nature of Plaintiffs' contract claim, which is based on an *implied* contract—not an express one.

An implied contract "is not expressed in words, but is implied from the conduct of the parties." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573–74, 898 A.2d 178 (2006) (citing *Janusauskas v. Fichman*, 264 Conn. 796, 804, 826 A.2d 1066 (2003)). "Thus, conduct of one party, from which the other may reasonably draw the inference of a promise, is effective in law as a promise." *Connecticut Light & Power Co. v. Proctor*, 324 Conn. 245, 260, 152 A.3d 470, 478–79 (2016) (cleaned up). It is not fatal to a claim for breach of implied contract that there are no express manifestations of mutual assent, so long as "the parties, by their conduct, recognized the existence of contractual obligations." *Janusauskas*, 264 Conn. at 805 (internal quotation marks omitted).[3]

Defendant appears to conflate breach of express contract claims with breach of implied contract claims. For example, in *Wallace*, 2021 WL 1109727, at *10—a case Defendant relies upon (*see* MTD at pp. 12–13)—the court dismissed the plaintiffs' express contract claim but held that they plausibly alleged a breach of implied contract. *See id*, at *11 (finding that allegations of defendant's privacy practices and conduct raised an inference that defendant's obligations went

---

[3] Defendant cites *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 718–19 (D. Conn. 2003) in support of its position that Plaintiffs needed to allege the specific provision of the Notice of Privacy Practices that Defendant violated. (MTD at p. 11). However, this case is inapposite. The breach of contract claim in *Timmons* was based on written agreements and oral promises. *Id.* at 718. There, the plaintiffs' written contract claim failed because they did not allege the provisions of the written agreements upon which their claim was based, and the oral agreement argument failed for statute of limitation purposes. *Id.* 718–19. Here, the claim asserted by Plaintiffs is an implied contract claim. (*See* Compl., ¶¶ 417–26).

beyond those required by HIPAA, which plausibly alleged a claim for breach of implied contract); *see also* (MTD at p. 13) (citing *Austin-Spearman v. AARP and AARP Servs., Inc.*, 119 F. Supp. 3d 1, 10–11 (D.D.C. 2015)).

Here, Plaintiffs allege that when Plaintiffs and Class Members provided their Private Information to Defendant, they entered into implied contracts in which Defendant agreed to safeguard and protect their Private Information. (Compl., ¶ 418). Plaintiffs also allege that Defendant required Plaintiffs and Class Members to provide and entrust their Private Information to Defendant as a condition of obtaining healthcare services from Defendant and that they would not have provided and entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant. (*Id.* ¶¶ 419, 422). Further, Plaintiffs allege that a meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their Private Information to Defendant with the reasonable understanding that their Private Information would be adequately protected by Defendant from foreseeable threats. (*Id.* ¶ 420). Additionally, Defendant's public-facing privacy policy explicitly states: "We understand that medical information about you is personal," and "we are committed to protecting medical information about you." (*Id.* ¶ 421). Such statements support Plaintiffs' reasonable expectation—and the implication—that Defendant would protect their Private Information, establishing the existence of an implied contractual obligation.

Importantly, breach of implied contract is a well-recognized cause of action in the data breach context and is routinely upheld at the motion to dismiss stage, including those within the Second Circuit. *See In re Unite Here*, 740 F. Supp. 3d at 384 ("the fact plaintiffs turned over their data, entrusting it to defendants, combined with the complaint's other allegations gives rise to a plausible inference that the parties mutually agreed defendant would safeguard that data"); *Cohen*

*v. Ne. Radiology, P.C.*, No. 20-cv-1202, 2021 WL 293123, at \*9 (S.D.N.Y. Jan. 28, 2021) (denying defendants' motion to dismiss breach of implied contract claim where plaintiff alleged that defendants obtained, created, and maintained personal health information as part of providing radiological services to their patients, evidencing an implicit promise by defendants to protect their patients' data from unauthorized users); *Whitfield v. ATC Healthcare Servs.*, LLC, No. 22-cv-5005, 2023 U.S. Dist. LEXIS 147602, \*16–17 (E.D.N.Y. Aug 22, 2023) (denying defendant's motion to dismiss breach of implied contract claim where plaintiff alleged that when she provided her PII and PHI as a prerequisite to her employment, Defendant agreed and promised (through its privacy policy) to safeguard that information from unauthorized disclosure); *Sackin*, 278 F. Supp. 3d at 750–51 (denying motion to dismiss plaintiff's claim of implied breach of contract based on defendant's privacy policies, which contained statements "support[ing] a finding of an implicit promise" to protect plaintiff's private information). Notably, another judge of this Court denied a similar motion to dismiss a breach of implied contract claim in one of the central cases upon which Defendant relies upon in its MTD. *See Jones*, 2024 WL 1307148, at \*9 (denying dismissal of breach of implied contract count as to Defendant Freestyle and finding that Freestyle made an implied promise of protection and secure data when plaintiffs provided their private information to Freestyle).

### 2. The Exchange of Private Information for Services Constitutes Valid Consideration.

Next, Defendant contends that Plaintiffs' implied contract claim fails for lack of consideration. (MTD at pp. 14–16). Specifically, Defendant argues that any promise to secure Plaintiffs' Private Information was merely a promise to comply with existing legal obligations, and thus cannot constitute valid consideration. (*Id*. at p. 15). However, Plaintiffs' allegation that they entrusted their Private Information to Defendant is sufficient to establish consideration.

17

Courts have repeatedly recognized that the provision of personal information in such contexts supports a finding of consideration in breach of implied contract claims. *See e.g.*, *Jones,* 2024 WL 1307148, at *9; *Rodriguez v. Mena Hosp. Comm'n*, No. 2:23-cv-2002, 2023 WL 7198441, at *7 (W.D. Ark. Nov. 1, 2023) (finding sufficient consideration where "Plaintiffs have alleged that they exchanged their PII for medical services, and the Court joins others in recognizing that such a transaction includes a promise to protect the Plaintiffs' PII"); *Farmer* , 582 F. Supp. 3d at 1187 ("The majority of federal courts have held that the existence of an implied contract to safeguard customers' data could reasonably be found to exist between a merchant and customer when a customer uses a payment card to purchase goods and services."); *Perry v. Bay & Bay Transp. Servs.*, 650 F. Supp. 3d 743, 757 (D. Minn. 2023) (recognizing implied contract claim where "Bay & Bay provided consideration by promising to consider Perry for employment, while Perry provided consideration by providing valuable property, his PI").

Defendant's position—that it merely complied with preexisting legal duties—overlooks the broader transaction at issue. Plaintiffs do not allege that Defendant's legal compliance alone formed the basis of the implied contract. Rather, they allege that by soliciting and accepting Plaintiffs' Private Information in exchange for medical services, Defendant implicitly undertook additional responsibilities—including the protection of that data—which goes beyond mere statutory compliance. That exchange is sufficient to establish consideration under well-settled law.

### D. Plaintiffs' Unjust Enrichment Claim is Adequately Stated.

Defendants' motion to dismiss Plaintiffs' unjust enrichment claim fails on multiple grounds. Defendant fundamentally mischaracterizes Connecticut law regarding alternative pleading, misconstrues the nature of the benefit conferred in the healthcare data security context, and prematurely argues remedy adequacy at the pleading stage. Thus, as with Yale's other arguments, this argument too must be denied.

### 1. Connecticut Law Permits Pleading Unjust Enrichment in the Alternative.

Defendant's threshold argument, that unjust enrichment is unavailable because Plaintiffs have an "adequate remedy at law" (MTD at p. 16), misapplies Connecticut precedent and ignores the Federal Rules' express authorization of alternative pleading.[4] *See* Fed. R. Civ. P. 8(d)(2)–(3). Under Connecticut law, "[p]arties routinely plead alternative counts alleging breach of contract and unjust enrichment, although in doing so they are entitled only to a single measure of damages arising out of these alternative claims." *Stein v. Horton*, 914 A.2d 606, 613–14 (Conn. App. 2007). "Under this typical belt and suspenders approach, the equitable claim is brought as an alternative count to ensure that the plaintiff receives some recovery in the event that the contract claim fails." *Id*. The Connecticut Supreme Court has clarified that "[t]he lack of a remedy under a contract is a precondition to recovery based on unjust enrichment or quantum meruit." *United Coastal Indus. v. Clearheart Constr. Co., Inc.*, 802 A.2d 901, 906 (Conn. App. 2002) (emphasis added). Defendant cannot credibly claim Plaintiffs have an adequate remedy while simultaneously arguing that all their legal claims are deficient.

### 2. Plaintiffs Adequately Allege the Elements of Unjust Enrichment.

---

[4] The cases cited by Defendants are readily distinguishable from the present dispute. In *Shaulis*, the plaintiff had an express sales contract that fully governed the transaction at issue, the purchase of a sweater, and the unjust enrichment claim sought to recover the purchase price for the same transaction covered by that contract. *See Shaulis v. Nordstrom, Inc.* 865 F.3d 1, 16 (1st Cir. 2017). Similarly, in *Bagwell*, the plaintiffs had comprehensive booking contracts that explicitly addressed royalty obligations, and their unjust enrichment claim sought the same royalties covered by those express contractual provisions. *See Bagwell v. World Wrestling Ent., Inc.*, No. 3:16-CV-1350 (JCH), 2017 WL 3579609 (D. Conn. May 5, 2017) (cautioning "[t]his is not to say that an unjust enrichment claim could not be pled in the alternative."). Unlike the plaintiffs in *Shaulis* and *Bagwell*, who sought remedies for the exact same performance obligations addressed in their contracts, Plaintiffs here seek restitution for Defendant's unjust retention of benefits in the absence of contractual provisions governing data security obligations. (*See* Compl., ¶¶ 429–38).

Under Connecticut law, plaintiffs seeking recovery for unjust enrichment must prove: (1) that the defendants were benefited; (2) that the defendants unjustly did not pay the plaintiffs for the benefits; and (3) that the failure of the payment was to the plaintiffs' detriment. *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994). Plaintiffs easily satisfy these elements.

First, Defendant substantially benefitted by receiving both monetary payments for healthcare services and valuable Private Information from Plaintiffs and the Class. (Compl., ¶¶ 429–34). Defendant benefited not only from payments received but also from building and maintaining its patient database under the mantle of trust that it would protect the Private Information it collected. (*Id*. ¶¶ 430, 433). Additionally, Defendant financially benefitted by avoiding expenditures that would have been required to implement adequate cyber defenses, essentially realizing cost savings that inflated its bottom line at patients' expense. (*Id*. ¶¶ 430–32, 434).

Second, Defendant unjustly retained these benefits without providing the data security protections that Plaintiffs' payments and trust were intended to secure. (*Id*. ¶¶ 431, 434). Part of the benefit for which Plaintiffs paid was the secure handling of their Private Information, a service with independent value understood to be included in the transaction. (*Id*. ¶¶ 430–31). By failing to implement adequate data security measures while retaining the full benefit of payments and continued use of Plaintiffs' data, Defendant effectively overcharged Plaintiffs by collecting fees for a level of data protection never delivered. (*Id*. ¶¶ 430–31, 434–35).

Third, Plaintiffs suffered detriment through the Data Breach while Defendant unjustly retained the benefits of the prior transactions. (*Id*. ¶¶ 434–37, 439). Defendant's passive retention of Plaintiffs' payments without dedicating sufficient resources to data security, combined with its

continued use of Plaintiffs' data despite inadequate protections, exemplifies the inequitable benefit that unjust enrichment claims address.

Defendant's argument that it derived no benefit because "criminal third parties" gained from the breach (MTD at pp. 17–18) fundamentally misunderstands the relevant benefit analysis. The benefit at issue is not the stolen data's subsequent use by hackers, but rather the benefit Defendant obtained when it initially received and retained Plaintiffs' data and payments under circumstances where it failed to provide adequate security in return. Under Connecticut law, "[i]n an unjust enrichment case, damages are ordinarily not the loss to the plaintiff, but the benefit to the defendant." *Rent-A-PC, Inc. v. Rental Mgmt., Inc.,* 96 Conn. App. 600, 606 (2006). The fact that criminal actors also profited from the Data Breach does not negate Defendant's unjust enrichment.

Unjust enrichment claims such as this are commonly recognized in the data breach context. *See In re Unite Here*, 740 F. Supp. 3d at 385 (denying motion to dismiss unjust enrichment claim and citing multiple other district court decisions in the Second Circuit finding the same); *Rudolph v. Hudson's Bay Co*., No. 19-cv-8472, 2019 WL 2023713, at *12 (S.D.N.Y. May 7, 2019); *Sackin*, 278 F. Supp. 3d at 751; *Wallace*, 2021 WL 1109727, at *11 ("[Plaintiffs] claim they were patients of defendant's healthcare provider network, paid defendant for its services, and were denied those benefits when defendant failed to abide by its obligations to safeguard plaintiffs' Private Information. These allegations plead the 'essence' of a claim for unjust enrichment."); *Bowen v. Paxton Media Grp., LLC,* No. 5:21-CV-00143-GNS, 2022 WL 4110319, at *4 (W.D. Ky. Sept. 8, 2022) (denying motion to dismiss unjust enrichment claim in data breach case); *In re Equifax*, 362 F. Supp. 3d at 1330 (declining to dismiss Contract Plaintiffs' unjust enrichment claim); *In re Capital One Consumer Data Sec. Breach Litig,* 488 F. Supp. 3d 374, 412 (E.D. Va. 2020) ("failure

to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying a plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards"); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1178 (D. Minn. 2014); *In re Rutter's Inc. Data Sec. Breach Litig.,* 511 F. Supp. 3d 514, 539 (M.D. Pa. 2021); *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* 198 F. Supp. 3d 1183, 1201 (D. Or. 2016); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329–30 (11th Cir. 2012) (sustaining unjust enrichment claim in healthcare data breach case where plaintiffs' premiums were supposed to fund data security, but defendant failed to secure data despite receiving payments for that purpose).

In sum, while Plaintiffs are not permitted to recover under both a breach of contract theory and an unjust enrichment theory, the Court should permit Plaintiffs' unjust enrichment claim to proceed as an alternative claim should their other claims prove inadequate.

### E.     Plaintiffs State a Claim for Breach of Fiduciary Duty.

Defendant argues that Plaintiffs' breach of fiduciary duty claim fails because: (i) Plaintiffs fail to allege a fiduciary relationship; (ii) Plaintiffs fail to allege Defendant breached its duty of loyalty; and (iii) the claim is precluded by Plaintiffs' implied contract claim. (MTD at p. 18). However, Defendant's arguments miss the mark for multiple reasons.

First, the Connecticut Supreme Court explicitly recognizes "the fiduciary nature of the physician-patient relationship, which is based on trust and confidence that develops as medical service is provided." *Byrne v. Avery Center for Obstetrics & Gynecology, P.C.*, 327 Conn. 540, 550, 175 A.3d 1 (2018). In *Byrne*, the Connecticut Supreme Court found that the unauthorized disclosure of confidential information by a healthcare provider gives rise to a tort claim[5] because

---

[5] Notably, in *Byrne*, the Supreme Court of Connecticut recognized multiple causes of action arising from the unauthorized disclosure of medical information, including invasion of privacy, breach of

"health care providers enjoy a special fiduciary relationship with their patients and that recognition of the privilege is necessary to ensure that this bond remains." *Id*. at 558. Indeed, many courts in other data breach cases have specifically acknowledged the existence of a fiduciary relationship between healthcare providers and their patients. *See In re Shields Health Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165 (D. Mass. Mar. 5, 2024) ("Plaintiffs have adequately pleaded that as their healthcare provider, [defendant] was their fiduciary."); *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp.3d 1304, 1318 (N.D. Ga. 2024) (finding "the retention of private information that patients provided while seeking medical care can create a fiduciary duty…."); *Purvis*, 563 F. Supp. 3d at 1383 (finding defendant, "as a healthcare provider, owed a fiduciary duty to the patient-Plaintiffs to keep their private information secure."). Here, all Plaintiffs allege that, as current or former patients, they entrusted their Private Information directly to Defendant, thereby establishing a fiduciary relationship. (Compl., ¶¶ 153, 165, 177, 189, 201, 214, 226, 238, 250, 262, 274, 286, 298, 311, 323, 335, 348, 359, 371, 442). Plaintiffs also allege that "[i]n light of the special relationship between Defendant, as a medical provider, and Plaintiffs and Class Members, Defendant became a fiduciary by undertaking a guardianship of Plaintiffs' and Class Members' Private Information." (*Id*. ¶ 442). Thus, Plaintiffs sufficiently allege a fiduciary relationship was created.

Next, Defendant's suggestion that allegations of fraud, self-dealing, or a conflict of interest are required to state a claim for breach of fiduciary duty is inconsistent with Connecticut law. The Connecticut Supreme Court squarely rejected this argument in *Barash v. Lembo*, 348 Conn. 264, 303 A.3d 577 (2023), holding that a claim for breach of fiduciary duty was ***not*** confined to

---

implied contract, medical malpractice, and ***breach of fiduciary duty*** or a duty of confidentiality. *Byrne*, 327 Conn. at 564 (emphasis added).

instances involving self-dealing.[6] Nonetheless, in healthcare data breach cases, allegations that a healthcare facility failed to adequately safeguard patient information is sufficient to allege it breached its fiduciary duties. *Purvis*, 563 F. Supp.3d at 1383; *Orthman v. Premiere Pediatrics, PLLC*, 2024 OK CIV APP 7, ¶ 34, 545 P.3d 124, 137 (finding that allegations a healthcare facility failed to take proper measures to protect patient information were sufficient to allege a breach of its fiduciary duty). Here, Plaintiffs accurately allege physicians owe their patients a fiduciary duty to protect their medical information (Compl., ¶ 443), and that Defendant, as a healthcare provider, breached this duty by: (i) failing to timely notify and/or warn Plaintiffs and Class Members of the Data Breach; and (ii) failing to implement and maintain adequate data security infrastructure, procedures, and protocols (*Id.* ¶ 450). As such, Plaintiffs' allegations are sufficient to allege a breach of fiduciary duty, and Defendant's assertion that such claims require allegations of fraud or self-dealing finds no support in Connecticut law.

Finally, Plaintiffs' breach of fiduciary duty claim is not precluded by their implied contract claim. Indeed, the Connecticut Supreme Court has specifically acknowledged that "[w]hen there is an independent basis for the fiduciary duty claims apart from the contractual claims, even if both are related to the same or similar conduct…the fiduciary duty claims will survive." *Clinton v. Aspinwall*, 344 Conn. 696, 707, 281 A.3d 1174, 1182 (2022) (citing *Grayson v. Imagination Station, Inc.*, No. Civ. A. 5051-CC, 2010 WL 3221951, at *7 (Del. Ch. Aug. 16, 2010)). This rationale has been embraced by courts within the Second Circuit. *See Zurich American Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 403 (S.D.N.Y. 2021) (holding breach of fiduciary duty claim

---

[6] Although *Barash* involved claims against a trustee, its reasoning applies with equal force here, as Defendant is a fiduciary and, as the court in *Barash* emphasized in its holding, "[t]he substantial majority of jurisdictions do not limit the cause of action to claims based on self-dealing or breach of the duty of loyalty." *Barash*, 348 Conn. at 301 (citing cases).

was not duplicative where defendant's fiduciary duty, though similar to defendant's contractual promises, was independent of the contract itself); *Trahan v. Lazar*, 457 F. Supp.3d 323, 349 (S.D.N.Y. 2020) (finding breach of fiduciary duty claim was not duplicative of breach of contract claim where the alleged breaches of fiduciary duties do not solely relate to obligations arising under the contracts); *Uddo v. DeLuca*, 425 F. Supp.3d 138, 155 (E.D.N.Y. 2019). Here, as a healthcare provider, Defendant's duty to safeguard Private Information arose from its fiduciary relationship with Plaintiffs and Class Members, and exists independently of any contractual obligations between the parties. (Compl., ¶ 443 (As a fiduciary, "[a] physician has a fiduciary duty to not disclose a patient's medical information.")). Therefore, Plaintiffs' breach of fiduciary duty claim may proceed.

### F. Plaintiffs Sufficiently State a Claim for Declaratory Judgment.

Defendant argues that Plaintiffs' declaratory judgment claim should be dismissed for three reasons, each of which fails as discussed below.

*First*, while Defendant is correct that there is no independent cause of action for a declaratory judgment claim, Plaintiffs may pursue declaratory relief to the extent that their substantive claims survive. *See Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 72 (S.D.N.Y. 2022) (data breach case declining to dismiss the plaintiff's claims for declaratory relief where the plaintiff properly pleaded underlying claims for negligence and negligence *per se*). Because Plaintiffs sufficiently state their other claims, for the reasons discussed above, Plaintiffs may seek declaratory relief with respect to those claims, and it would therefore be inappropriate for this Court to dismiss their declaratory judgment claim. *Id.*

*Second*, despite Defendant's arguments to the contrary, Plaintiffs plead an ongoing, actionable dispute arising from Defendant's continued data security inadequacies. Here, Plaintiffs allege that Defendant continues to possess their Private Information and that Defendant's data

security measures remain inadequate to safeguard Plaintiffs' Private Information. (Compl., ¶¶ 151, 455). As such, Plaintiffs face a substantial risk of future harm if Defendant's data security short comings are not addressed. (*Id.* ¶¶ 455, 457, 459). As other courts have recognized in the data breach context, such allegations sufficiently allege a real and immediate dispute with respect to the parties' legal relations. *See Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 357 (N.D.N.Y. 2023) (denying motion to dismiss claim for injunctive relief where plaintiff alleged security measures continued to be inadequate and they had continuing risk of harm); *In re USAA Data Sec. Litig.,* 621 F. Supp. 3d 454, 473 (S.D.N.Y. 2022) (citing *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 414–15 (finding allegation of "continued inadequacy of Defendants' security measures" was sufficient to support declaratory judgment claim in data breach case)).[7]

*Third*, Defendant wrongly argues that Plaintiffs' declaratory judgment claim fails because money damages can address their alleged harms. Defendant's argument misconstrues the relevant issue. Here, Plaintiffs' declaratory judgment claim seeks forward-looking relief to ensure that Defendant utilizes proper data security measures in the future. This is separate and distinct from the retrospective relief (*i.e.*, money damages) that Plaintiffs seek for the harm caused by the Data Breach. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1139 (N.D. Cal. 2018) (denying dismissal of "forward-looking" declaratory relief claim because it served a "distinct purpose" from the plaintiffs' contract claims which sought retrospective relief for security

---

[7] Defendant's assertions that it has taken steps to prevent future data breaches "is too vague and conclusory for the Court to conclude, at this early stage of the case, that there is no longer a live, actionable controversy regarding the adequacy of [Defendant's] data security." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 472 (S.D.N.Y. 2022).

breach). As such, Plaintiffs' declaratory judgment claim does not seek monetary damages. For these reasons, Plaintiffs have sufficiently stated a claim for declaratory judgment.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. Should the Court deem necessary, Plaintiffs pray for leave to amend their Consolidated Complaint.

Date: August 11, 2025

/s/ *William B. Federman*
William B. Federman (admitted *Pro Hac Vice*)
Tanner R. Hilton (admitted *Pro Hac Vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com

Gary Klinger (admitted *Pro Hac Vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

Jeff Ostrow (admitted *Pro Hac Vice*)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

Mariya Weekes (admitted *Pro Hac Vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL  33134
Tel: (786) 879-8200
mweekes@milberg.com

Oren Faircloth, CT Bar #438105
Tyler J. Bean*
Neil P. Williams*

**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
ofaircloth@sirillp.com
tbean@sirillp.com
nwilliams@sirillp.com

Michael J. Reilly (CT# 28651)
**CICCHIELLO & CICCHIELLO, LLP**
364 Franklin Avenue
Hartford, CT 06114
Tel: (860) 296-3457
mreilly@cicchielloesq.com

Leanna A. Loginov*
**SHAMIS GENTILE**
14 NE 1st Ave., Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

Linda P. Nussbaum (admitted *Pro Hac Vice*)
**NUSSBAUM LAW GROUP P.C.**
1133 Avenue of the Americas, 31st FL
New York, NY 10036
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com

Christian Levis (CT# 31947)
Amanda G. Fiorilla*
Peter Demato*
Anthony M. Christina*
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
clevis@lowey.com
afiorilla@lowey.com

pdemato@lowey.com
achristina@lowey.com

Joseph P. Guglielmo (CT# 27481)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue
24th Floor
New York, NY 10169
Tel: (212) 223-6444
jguglielmo@scott-scott.com

Anja Rusi (CT# 30686)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
arusi@scott-scott.com

Gary F. Lynch*
Nicholas A. Colella*
Patrick D. Donathen (admitted *Pro Hac Vice*)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
gary@lcllp.com
nickc@lcllp.com
patrick@lcllp.com

Michele S. Carino
**GREENWICH LEGAL**
**ASSOCIATES LLC**
881 Lake Avenue
Greenwich, CT 06831
Tel: (203) 622-6001
mcarino@grwlegal.com

Joseph Kanee*
**EDELSBERG LAW**
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

Tel: (786) 933-2775
Joseph@edelsberglaw.com

André Bélanger*
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
andre.belanger@poulinwilley.com

Jeremy C. Virgil (CT# 27707)
**ZELDES, NEEDLE & COOPER, PC.**
1000 Lafayette Blvd, 7th Floor
Bridgeport, CT 06604
Tel: (203) 333-9441
jvirgil@znclaw.com

Nicholas A. Migliaccio*
Jason S. Rathod*
**MIGLIACCIO & RATHOD LLP**
412 H St NE, Suite 302
Washington DC 20002
Tel: (202) 470-3520
jrathod@classlawdc.com

Samuel M. Ward
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Tel: (619) 230-0800
sward@barrack.com

Andrew Heo
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-0600
aheo@barrack.com

William M. Brown, Jr. (CT# 20813)
**MORGAN & MORGAN, P.A.**
199 Walter St., Suite 1500
New York, NY 10038
Tel: (917) 344-7039

william.brown@forthepeople.com

John A. Yanchunis*
Ronald Podolny*
Antonio Arzola, Jr.*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 275-5272
jyanchunis@forthepeople.com
ronald.podolny@forthepeople.com
ararzola@forthepeople.com

Mark S. Reich*
Melissa G. Meyer*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10006
Tel: (212) 363-7500
mreich@zlk.com
mmeyer@zlk.com

Brian Murray*
**GLANCY PRONGAY & MURRAY LLP**
230 Park Ave., suite 358
New York, NY 10169
Tel: (212) 682 5340
BMurray@glancylaw.com

Joseph M. Lyon*
**THE LYON FIRM, ALC**
2754 Erie Avenue
Cincinnati, Ohio 45208
Tel: (513) 381-2333
jlyon@thelyonfirm.com

Paul J. Doolittle
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

Israel David (admitted *Pro Hac Vice*)

**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, NY 10004
Tel: (212) 350-8850
israel.david@davidllc.com

Kevin Laukaitis*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Tel: (215) 789-4462
klaukaitis@laukaitislaw.com

(* denotes *pro hac vice* application
forthcoming)

*Attorneys for the Plaintiffs and on Behalf of
the Putative Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 11th day of August, 2025, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.

*/s/ William B. Federman*
William B. Federman
