# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: YALE NEW HAVEN HEALTH SERVICES CORP. DATA BREACH | Case No. 3:25-cv-00609 |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs,[1] individually, and on behalf of the Settlement Class, respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and request that the Court: (i) preliminarily approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval; (ii) appoint Plaintiffs as the Class Representatives; (iii) appoint Jeff Ostrow of Kopelowitz Ostrow P.A., Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and William B. Federman of Federman & Sherwood as Class Counsel; (iv) appoint Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (v) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (vi) approve the Parties' proposed Notice Program and Notice; (vii) approve the Claim Process and Claim Form; (viii) set the Claim Deadline, Opt-out Deadline, and Objection Deadline; and (ix) set a Final Approval Hearing. In support of the Motion for Preliminary Approval, attached is a Declaration of Class Counsel ("Joint Decl."), attached as *Exhibit B*.

## I.    INTRODUCTION

This Action arises from a Data Incident that Plaintiffs allege compromised the Private Information of over five million individuals. Under the proposed Settlement, as set forth in the

---

[1] All capitalized terms herein shall have the same meaning as those defined in the Settlement Agreement and Release, attached as *Exhibit A* to the Motion for Preliminary Approval.

Agreement and its accompanying exhibits, Defendant has agreed to fund or cause to be funded an $18 million non-reversionary all cash Settlement Fund for the benefit of the Settlement Class, and will also provide valuable injunctive relief in the form of meaningful data security measures that Defendant is implementing in the wake of the Data Incident.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. It was negotiated at arms-length with the assistance of Bennett G. Picker, of Stradley Ronon Stevens & Young LLP, a well-respected mediator with extensive experience mediating data breach class actions and complex cases. Joint Decl. ¶ 23. As described below, the Settlement provides for both monetary relief and equitable relief.  Settlement Class Members will have the opportunity to seek reimbursement of up to $5,000.00 for Documented Losses arising from the Data Incident or, in the alternative, a cash payment of approximately $100.00. Agreement ¶ 78(a)–(b). Further, in addition to reimbursement of documented losses or an alternative cash payment, Settlement Class Members can also make a claim for two years of CyEx's Medical Data Monitoring product. *Id.* ¶ 78(c).

Class Counsel has extensive experience in data breach litigation and is keenly aware of the strengths and weaknesses of litigating the Action. Joint Decl. ¶ 30. Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and Defendant's various defenses as to standing, liability, and other affirmative defenses. *Id.* ¶ 34. The Settlement will also avoid further delay in providing relief to the Settlement Class and expensive and protracted litigation with uncertain results. *Id.* ¶ 35. In exchange for the above-referenced consideration, Plaintiffs and all Settlement Class Members will release Defendant and the other Released Parties from the claims in the Action. Accordingly, Plaintiffs respectfully request this Court preliminarily approve the Settlement.

II.    **BACKGROUND**

A.    **The Data Incident.**

Defendant is Connecticut's leading healthcare system with over 4,500 university and community physicians providing comprehensive, integrated, family-focused care in more than 100 medical specialties. Joint Decl. ¶ 3. Defendant maintained Private Information pertaining to its patients, including, but not limited to, their names, addresses, dates of birth, telephone numbers, email addresses, race or ethnicity, Social Security numbers, patient types, and/or medical record numbers. *Id*. ¶ 4.

On or about March 8, 2025, Defendant noticed suspicious activity on its computer systems and confirmed that cybercriminals accessed and acquired information stored on those systems. *Id*. ¶ 5. Subsequently, on March 11, 2025, Defendant posted a statement addressing the Data Incident on its website and informing the public that an unauthorized third-party gained access to Defendant's network. Complaint *Id*. ¶ 6. Defendant thereafter notified over five million individuals, including Plaintiffs and Settlement Class Members, that their Private Information may have been impacted by the Data Incident. *Id*. ¶ 7.

B.    **Summary of the Litigation and Settlement Negotiations.**

Following public notification of the Data Incident, Plaintiff Michael Liparulo filed the first class action lawsuit relating to the Data Incident in the Superior Court of Connecticut in March of 2025 *Id*. ¶ 8.  After discussing the demographics of the impacted individuals and jurisdiction with Defendant's counsel, Plaintiff Liparulo voluntarily dismissed his action pending in the Superior Court of Connecticut and, on April 16, 2025, Plaintiffs Jon Nathanson and Michael Liparulo filed the first two class action lawsuits relating to the Data Incident in this Court. *See Nathanson v.  New Haven Health Services, Corp.,* No. 3:25-cv-00609; *Liparulo v. Yale New Haven Health Services,*

*Corp.*, No. 3:25-cv-00610.  On the same day, Plaintiff Nathanson filed a motion to consolidate the *Nathanson* and *Liparulo* actions and on April 22, 2025, the *Liparulo* action was consolidated into the *Nathanson* action *Id*. ¶ 9; Case No. 3:25-cv-00609, [ECF No. 22].

Thereafter, Plaintiffs Nathanson and Liparulo began discussing the prospect of early exchanges of data and background information. Joint Decl. ¶ 14. Once information was exchanged, the Parties then discussed the potential to resolve the litigation. *Id*. ¶ 15. Although the Parties were unsure if settlement was in their best interest at that time, while continuing to meet and confer, they scheduled a mediation for August 8, 2025, with experienced class action mediator, Bennett G. Picker. *Id*. ¶ 16. On April 25, 2025, Plaintiffs Nathanson, Liparulo, and Defendant filed a Joint Notice of Mediation and Stipulation to Set Case Deadlines informing the Court of the Parties' mediation scheduled for August 8, 2025, with mediator Bennett G. Picker. Esq. [ECF No. 27]. Additionally, the Parties stipulated to a case schedule setting deadlines for the filing of Plaintiffs' consolidated class action complaint, Defendant's motion to dismiss, Plaintiffs' opposition brief, and Defendant's reply. *Id*. In response, on May 7, 2025, the Court entered a scheduling order setting the following deadlines: (i) Plaintiffs' consolidated class action complaint was due by June 16, 2025; (ii) Defendant's answer or motion to dismiss was due by July 16, 2025; (iii) Plaintiffs' opposition to any motion to dismiss was due by August 29, 2025; and (iv) Defendant's reply was due by September 19, 2025. [ECF No. 38].

In accordance with the Court's scheduling order, Plaintiffs Nathanson and Liparulo propounded written discovery on the Defendant, including interrogatories and requests for production of documents. Joint Decl. ¶ 17. Plaintiffs Nathanson and Liparulo also participated in a rule 26(f) conference with Defendant to discuss a proposed litigation schedule and discovery plan. *Id*. ¶ 10. In anticipation of discovery, the Parties negotiated an electronically stored

information protocol and a protective order, which were stipulated to and filed with the Court on May 8, 2025. [ECF Nos. 40, 41]. The Court approved the protective order on May 9, 2025. [ECF No. 42].

Furthermore, in anticipation of mediation, Plaintiffs requested and Defendant produced information related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident, the categories of Private Information involved, the security enhancements Defendant implemented following the Data Incident to better protect its computer systems from future incidents, and a detailed explanation of the Data Incident. Joint Decl. ¶ 18. The Parties also exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, comparable case settlements and settlement positions. *Id*. ¶ 19.

After the *Nathanson* and *Liparulo* actions were filed, 16 additional related actions were filed in this Court relating to the Data Incident.[2] *Id*. ¶ 11. While working to move the litigation forward, counsel for Plaintiffs Nathanson and Liparulo met and conferred with Plaintiffs' counsel in the Related Actions, and ultimately they decided to self-organize and work cooperatively *Id*. ¶ 12. As such, Plaintiffs collectively filed a Consolidated Class Action Compliant on June 12, 2025, alleging the following causes of action on behalf of themselves and a nationwide class: (i)

---

[2] *Harvin v. New Haven Health Services Corp.*, No. 3:25-cv-00612; *Wise v. New Haven Health System*, No. 3:25-cv-00615; *Taylor-Austin v. New Haven Health Services Corp.*, No. 3:25-cv-00632; *Brumfield v. New Haven Health Services Corp.*, No. 3:25-cv-00658; *Adeji, et al. v. New Haven Health*, No. 3:25-cv-00651; *Taylor v. New Haven Health System*, No. 3:25-cv-00656; *Mott v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00662; *Wilson v. Yale New Haven Health System*, No. 3:25-cv-00666; *LeMaire v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00674; *Quinn v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00679; *Mortensen v. Yale New Haven Health System*, No. 3:25-cv-00690; *Wu v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00691; *Rodriguez v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00714; *Barletta v. Yale New Haven Health System*, No. 3:25-cv-00722; *Snitkoff v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00736; *Ortiz v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00784; and *Maglione v. Yale New Haven Health System*, No. 3:25-cv-00821.

negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; (v) breach of fiduciary duty; and (vi) declaratory judgment. [ECF No. 54]. Thereafter, Defendant filed a Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on July 16, 2025 [ECF No. 61] and Plaintiffs filed their opposition on August 11, 2025 [ECF No. 66].

On August 8, 2025, the Parties participated in an all-day mediation with all Plaintiffs' counsel having the opportunity to participate in person at Mr. Picker's offices or virtually via Zoom. Joint Decl. ¶ 20.  After a full day of arms-length negotiations, the Parties agreed to the material terms of this Settlement which resolves all claims on a classwide basis and is memorialized in the Agreement. *Id.* ¶ 21.

Following the mediation, the Parties continued to negotiate the finer points of the Settlement and worked together to draft the Agreement, Notice documents, and the instant Motion for Preliminary Approval. Plaintiffs also contacted several well-known settlement administrators to obtain bids for providing notice and administration. *Id.* ¶ 22.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class Member Benefits.

The Settlement negotiated on behalf of the Settlement Class provides for a non-reversionary all cash Settlement Fund of $18 million that will be used to pay for: (i) Service Awards to Class Representatives awarded by the Court; (ii) attorneys' fees and costs awarded by the Court to Class Counsel; (iii) Settlement Administration Costs; and (iv) Settlement Class Member Benefits to Settlement Class Members. Agreement ¶ 75. The Settlement negotiated on behalf of the Settlement Class provides for multiple forms of relief, including the Settlement Class Member's choice between a reimbursement for Documented Losses or an Alternative Cash

payment and Medical Data Monitoring. *Id*. ¶ 78. Further, the Settlement also includes information security enhancements Defendant is implementing following the Data Incident. *Id.*

> The Settlement Class is defined as:
>
> All living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

*Id.* ¶ 68. Excluded from the Settlement Class are (i) all persons who are directors, officers, members, and agents of Defendant, or their respective subsidiaries and affiliated companies, and any entity in which Defendant has a controlling interest; (ii) governmental entities; (iii) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (iv) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident, or who pleads *nolo contendere* to any such charge. *Id.*.

The Settlement Class includes over five million individuals. Defendant has agreed to pay the Claims of Settlement Class Members arising from the Data Incident with a cap of $5,000.00 for any individual with documented losses or an alternative cash payment estimated to be $100.00. Agreement ¶ 78(a)–(b). Further, in addition to reimbursement of documented losses or an alternative cash payment, Settlement Class Members can also make a claim for two years of Medical Data Monitoring. *Id*. ¶ 78(c). All Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund or a decrease from the Net Settlement Fund if the amount of Valid Claims exhausts the amount of the Net Settlement Fund. *Id*. ¶ 78. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. *Id*.

1.      **Cash Payment A – Documented Losses.**

Cash Payment A provides for compensation for documented, unreimbursed ordinary losses fairly traceable to the Data Incident, up to a total of $5,000.00 per person. *Id*. ¶ 78(a). To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documented losses. *Id*. Settlement Class Members will be required to submit reasonable documentation supporting the losses, which means documentation contemporaneously generated or prepared by a third-party or the Settlement Class Member supporting a claim for expenses paid. *Id.*

2.      **Cash Payment B – Alternative Cash Payment.**

As an alternative to Cash Payment A, Settlement Class Members may elect to receive Cash Payment B, which is a cash payment in the *estimated* amount of $100.00. *Id*. ¶ 78(b). No third-party documentation is required to receive this payment.

3.      **Medical Data Monitoring.**

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that will include two years of CyEx's Medical Data Monitoring product that will include: (i) real time monitoring of the credit file with one (1) credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 78(c).

4.      **Ongoing Data Security Efforts and Enhancements.**

In addition to the benefits described above, the Settlement also acknowledges Defendant's commitment to maintain certain enhancements and improvements to its security environment. *Id.*

¶ 78(d). Prior to Final Approval, Defendant will provide Class Counsel with a written attestation regarding the security measures, including the cost associated therewith, it implemented following the Data Incident (or will implement) to better protect the Settlement Class' Private Information from future disclosure resulting from a subsequent Data Incident. *Id*. The costs of any such security measures on the part of Defendant were paid or will be paid separately by the Defendant and will not come out of the Settlement Fund. *Id.*

**B.      The Release.**

The Release is tailored to the claims "relating to the Data Incident," *i.e.*, that have been pled or could have been pled in this Action. Settlement Class Members who do not opt-out of Settlement will release all claims, whether known or unknown, against Defendant and its affiliates, that relate to the Data Incident. *Id.* ¶¶ 111-15.

**C.      The Notice and Claim Process.**

Under the Settlement Agreement, Class Counsel, with Defendant's approval, has selected Epiq Class Action Claims & Solutions, Inc. to be the Settlement Administrator, who is charged with the responsibility to provide the Settlement Class with notice and administer the claims. *Id*. ¶ 66.  The Settlement Administrator will administer various aspects of the Settlement under the supervision of the Parties' counsel. *Id.* ¶¶ 80-82. Class Counsel's decision, with Defendant's consent, to select Epiq Class Action Claims & Solutions, Inc. was based on the scope of the services proposed balanced against the cost for such services. Joint Decl. ¶ 49.

The Notice Program provides that within 10 days after the entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with the Class List. *Id*. ¶ 83. Within 30 days of entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein, using Email Notice, Postcard Notice, if necessary,

and Long Form Notice approved by the Court. *Id*. ¶ 84. Settlement Class Members whose Email Notice bounces back or is undeliverable, or for whom an email address is not available, will be sent a Postcard Notice, to the extent the Settlement Administrator can identify the postal address of the Settlement Class Member. *Id*. ¶¶ 85-86. The Settlement Administrator shall perform reasonable postal address traces. *Id*.

The Email Notice and Postcard Notice will include, among other information: (i) a description of the material terms of the Settlement; (ii) how to submit a Claim Form; (iii) the Claim Form Deadline; (iv) the Opt-out Deadline which is the last for Settlement Class members to opt-out of the Settlement Class; (v) the Objection Deadline which is the last day for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (vi) the Final Approval Hearing date; and (vii) the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. *Id*. ¶ 85.

Finally, the Long Form Notice also shall include a procedure for Settlement Class members to opt-out of the Settlement Class or object to the Settlement, and the Email Notice and Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. *Id*. ¶ 88.

### D.    Claims Process.

The timing of the Claims Process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Joint Decl. ¶ 53. Settlement Class Members must submit their Claim Form to the Settlement Administrator by the Claim Form Deadline, which is 90 days after the Notice Date, either by mail or online. Agreement ¶¶ 27. The

Claim Form is written in plain language to facilitate ease in completion. *Id.* at Ex. 4. The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. *Id.* ¶ 93.

### E.    Requests for Exclusion and Objections.

Settlement Class Members will have up to 60 days after the Notice Date to object or submit a request to opt-out of the Settlement. *Id.* ¶¶ 53-54. Similar to the timing of the Claims Process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, which will be 45 days after the Notice Date. *Id.* ¶ 105.

### F.    Attorneys' Fees, Costs, and Service Awards.

Class Counsel shall apply to the Court for Service Awards for the Class Representatives of up to $2,500.00 each. *Id.* ¶ 108. The Service Awards are meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including: (i) investigating the matter prior to and after retaining counsel; (ii) participating in the plaintiff vetting process implemented by Class Counsel; (iii) reviewing and approving pleadings; (iv) remaining in close contact with Class Counsel to monitor the progress of the litigation; and (v) reviewing and communicating with Class Counsel regarding the settlement. Joint Decl. ¶ 46. Further, Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. Agreement ¶ 107.

Plaintiffs will file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, and prior to Settlement Class

members' deadline to opt-out of or object to the Settlement Agreement. *Id*. ¶ 105.

## IV.    LEGAL AUTHORITY

"Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Macedonia Church v. Lancaster Hotel, LP*, No. 05-0153 TLM, 2011 WL 2360138, at *9 (D. Conn. June 9, 2011). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether to preliminarily approve a class action settlement, courts must first determine that the settlement class, as defined by the Parties, is certifiable under the standards of Federal Rule of Civil Procedure 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Johnson v. Kendall*, No. 3:21-CV-1214 (CSH), 2023 WL 6227678, at *2 (D. Conn. Sept. 26, 2023); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014).

Then, as part of Rule 23(e)'s "fairness, reasonableness, and adequacy" inquiry, courts must determine whether the terms of a proposed settlement warrant preliminary approval. *Lassen v.*

*Hoyt Livery, Inc.*, No. 13-CV-1529 (VAB), 2017 WL 11682923, at *4 (D. Conn. June 5, 2017) ("Before approving a class action settlement, 'the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion.'" (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). Courts in this Circuit find preliminary approval is warranted where it is the result of "serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval." *Id.*; *Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. Oct. 16, 1997); *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also* Manual for Complex Litigation, § 30.41.

In granting preliminary approval, courts direct notice to be provided to settlement class members, who are given the opportunity to exclude themselves from or object to the settlement. *Lassen*, 2017 WL 11682923, at *4; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102. At the final approval hearing, settlement class members may be heard by the court prior to its determination of whether to grant final approval of the settlement and dismiss the case. *Id.*

Because cases like the one at issue here, if handled on an individual basis, would heavily tax the system and cause large and unwarranted expenditures of both public and private resources, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner. As set forth below, the Settlement here warrants Preliminary Approval so that Settlement Class Members will be notified of the Settlement and provided an opportunity to participate in the multiple opportunities for relief.

## V.    LEGAL DISCUSSION

### A.    The Settlement Should be Preliminarily Approved.

Courts within the Second Circuit follow the *Manual for Complex Litigation (Fourth)* guidelines and advise that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies [Rule 23] criteria[.]" § 21.632; *see, e.g.*, *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105, n.30 (D. Conn. 2010). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.).

Rule 23(a) permits an action to be maintained as a class action if: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact common to the class; (iii) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (iv) the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Further, "[i]n addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(3) which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

For the reasons discussed below, the Settlement Class should be certified for settlement

purposes pursuant to Rule 23(a) and (b).

### 1.    The Settlement Class is Sufficiently Numerous.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *Johnson*, 2023 WL 6227678, at *4. While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc*., 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995). Here, notice of the Data Incident was sent to over five million individuals. Joint Decl. ¶ 50. The large Settlement Class renders joinder impracticable. As such, the numerosity requirement is easily satisfied.

### 2.    Questions of law and Fact are Common to the Settlement Class.

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Johnson*, 2023 WL 6227678, at *4. The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377. "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp*., 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, commonality is met because multiple common issues exist, including: (i) whether

Defendant failed to adequately safeguard Plaintiffs' and Class Members' Private Information; (ii) whether Defendant had a duty to protect Settlement Class Members' data and whether it breached that duty; (iii) whether Defendant's data security systems, prior to and during the Data Incident, complied with applicable data security laws and regulations; and (iv) whether Defendant's conduct rose to the level of negligence. These common questions, and others alleged by Plaintiffs in their Consolidated Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3.    Plaintiffs' Claims and Defenses are Typical of the Settlement Class.

Typicality under Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Securities Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Johnson*, 2023 WL 6227678, at *5; *see also Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 155 (S.D.N.Y. Nov. 26, 2002). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.,* 126 F.3d at 376.

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Data Incident—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' Private Information. Each Plaintiff, like each Settlement Class Member, received a notice from Defendant regarding the Data Incident. Thus, Plaintiffs' claims are typical of the Settlement Class Members' claims, and the typicality requirement is satisfied.

**4.      Plaintiffs and Class Counsel Will Provide Fair and Adequate Representation for the Settlement Class.**

Under Rule 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy of representation requirement, Plaintiffs must demonstrate that: (i) the class representatives do not have conflicting interests with other class members; and (ii) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs and Settlement Class Members' data was all compromised by Defendant in the Data Incident. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible to claim the same types of relief. Moreover, the Private Information of each Plaintiff and Settlement Class Member will be better protected going forward as a result of the enhanced security measures that Defendant has agreed to implement.

With respect to the second requirement, in appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Class Counsel have decades of combined experience as vigorous data breach class action litigators and are well suited to advocate on behalf of the Settlement Class. Joint Decl. ¶ 31. Class Counsel worked cooperatively and efficiently and have devoted substantial time and resources to this case. *Id.* ¶ 32. This work has included: (i) fully investigating the facts and legal claims, including interviewing and vetting the Plaintiffs; (ii) obtaining and reviewing documents from Class Members substantiating their claims; (iii) drafting and preparing the complaint originally filed in the

Superior Court of Connecticut and working with counsel in the 16 Related Actions to file a comprehensive Consolidated Complaint in this Court on June 12, 2025; (iv) regularly communicating with the named Plaintiffs to keep them informed of the progress in the case and settlement; (v) requesting, obtaining, and reviewing documents and information from Defendant regarding the Data Incident, Defendant's remedial measures after the Data Incident, and Defendant's cyber insurance status; (vi) drafting and negotiating a comprehensive ESI and Protective Order; (vii) participating in settlement negotiations with Defendant prior to and during the August 8, 2025 mediation with mediator Bennett G. Picker; (viii) soliciting bids from several claims administrators and working with Defendant to select the Settlement Administrator; (ix) developing the notice program and distribution plan for the Settlement Agreement; (x) working with the Settlement Administrator to finalize the notice and claim forms, and ensure the Settlement Website was created to easily notify the Settlement Class Members of their rights and obligations under the Agreement; (xi) negotiating and drafting the Settlement Agreement; and (xii) researching and briefing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. *Id*. ¶ 33. Thus, the requirements of Rule 23(a) are satisfied.

### 5. Common Legal and Factual Issues Predominate in the Action and Class Treatment is Superior.

To show that common issues predominate, Plaintiffs must demonstrate that common questions of law or fact relating to the Settlement Class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.,* 521 U.S. at 623. The predominance requirement is met where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Second Circuit has held that "to meet the

predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (citations omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Amchem Prods., 521 U.S.* at 620.

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information of Plaintiffs and the Settlement Class, and whether Defendant breached that duty. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). Courts around the country have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. Aug. 15, 2018) (predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (common

predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of millions of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). The resolution of this matter through the Settlement guarantees an increase in judicial efficiency and conservation of resources over the alternative of individually litigating the claims of the individuals affected, all of which arise out of the *same* Data Incident.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Settlement Class should be preliminarily certified for settlement purposes.

**B.    The Settlement Terms are Fair, Adequate, and Reasonable.**

Rule 23(e)(2) permits approval of a class action settlement after the Court determines the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In evaluating a class action settlement, courts in the Second Circuit consider factors such as: (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing damages; (v) the

risks of maintaining the class action through the trial; (vi) the ability of the defendants to withstand a greater judgment; (vii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (viii) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds).

Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*) § 11.25 (4th ed. 2002). While preliminary approval is a matter of discretion for the trial court, the court must give "proper deference to the private consensual decision of the parties" in exercising its discretion. *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995); *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *6 (D. Conn. Nov. 3, 2016); *Clark v. Ecolab Inc.,* 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation omitted). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement. *Newberg* § 11.25; *see also Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102; *Bourlas,* 237 F.R.D. at 354.

Fairness is determined by reviewing both the terms of the settlement agreement and the negotiating process that led to such an agreement. *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Preliminary approval should be granted where the settlement agreement is

the result of serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies, and where the settlement appears to fall within the range of possible approval. *See Cohen*, 262 F.R.D. at 157; *Kemp-DeLisser*, 2016 WL 6542707, at \*7; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. Oct. 16, 1997); *Bourlas*, 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also Manual for Complex Litigation*, § 30.41.

### 1. The Settlement was the Result of Arm's Length Negotiations Between the Parties.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation omitted). Using a private mediator reinforces the non-collusive nature of a settlement. *Kemp-DeLisser*, 2016 WL 6542707, at \*10; *Capsolas v. Pasta Res. Inc.*, No. 10-cv-5595, 2012 WL 1656920 at \*1 (S.D.N.Y. May 9, 2012). Here, the Settlement is the product of good faith, arm's length negotiations, conducted with the assistance of highly respected mediator, Bennett G. Picker, who has extensive experience with both class actions generally and data privacy matters in particular. Joint Decl. ¶ 23. Following the mediation, the Parties continued to negotiate the terms of the Settlement, including finalizing the Settlement Agreement, exhibits, and Notice Program, as well as determining and confirming remedial measures to enhance Defendant's data security. *Id*. ¶ 22. Further, the Parties also engaged in meaningful informal discovery that allowed each side to understand the factual and legal issues related to the Data Incident. *Id*. ¶ 60. Provided that meaningful discovery and extensive negotiations took place, this factor tips the scale in favor of granting preliminary approval. *See Wal-Mart Stores, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting Manual for Complex Litigation, Third § 30.42 (1995)). Accordingly, the presumption of reasonableness should apply here.

### 2. The Settlement Provides Substantial Relief to the Settlement Class, Particularly in Light of the Uncertainty of Prevailing on the Merits.

The Settlement guarantees Settlement Class Members real relief for harms suffered as a result of the Data Incident and also provides Settlement Class Members with assurance that they are less likely to be subject to similar breaches due to Defendant's data security systems enhancements. Settlement Class Members who submit Valid Claims may choose between two Cash Payments—Cash Payment A or Cash Payment B—and may also claim three years of Medical Monitoring from CyEx. Agreement ¶ 78(a)–(c)). Indeed, Cash Payment A provides compensation for documented, unreimbursed losses up to a total of $5,000.00 per person. *Id*. ¶ 78(a). In the alternative, Cash Payment B provides a *pro rata* cash payment estimated to be $100.00. *Id*. ¶ 78(b). The medical data monitoring product is provided by CyEx and will include: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id*. ¶ 78(c). Additionally, Defendant has agreed to implement enhanced data security protocols to ensure Settlement Class Members' Private Information will be protected from future Data Incidents. *Id*. ¶ 78(d).

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that should litigation continue, Defendant will assert a number of potentially case-dispositive defenses, including the arguments made in Defendant's Motion to Dismiss filed on

July 16, 2025. Proceeding with litigation would open up Plaintiffs to the risks inherent in trying to achieve and maintain class certification, and prove liability—both factors considered under the test for final approval established by *Grinnell*. 495 F.2d at 463. In fact, should litigation continue, Plaintiffs would have to immediately survive the motion to dismiss, which is currently pending [ECF No. 61], in order to proceed past the pleading stage and into litigation.

Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). This is particularly true in this case considering this Court's recent decision in *Jones v. Sturm, Ruger & Co., Inc.*, No. 3:22-cv-1233 (KAD), 2024 WL 1307148 (D. Conn. Mar. 27, 2024), which dismissed plaintiffs' negligence and unjust enrichment claims in a similar data breach class action. While Plaintiffs are confident their negligence and unjust enrichment claims will survive Defendant's pending Motion to Dismiss, this Court's decision in *Jones* confirms that success is ***not*** guaranteed. Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses it anticipates Defendant will likely assert—but it is obvious their success at trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members will receive significant benefits in the immediate future without having to face further risk of receiving no relief.

### 3.    Continued Litigation Will be Complex, Lengthy, and Expensive.

The costs, risks, and delay of continued litigation weigh in favor of settlement approval.

Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be ignored. Aside from the potential that either side will lose at trial, Plaintiffs anticipate incurring substantial additional costs in pursuing this Action further. Should litigation continue, Plaintiffs would need to defeat Defendant's pending Motion to Dismiss, continue with extensive discovery, prepare and file a later motion for summary judgment, and both gain and maintain certification of the class. The additional costs would rise substantially as Plaintiffs prepare for class certification briefing and, if certification is granted, an almost certain attempt at an interlocutory appeal.

> **4.    The Settlement was Reached After Significant Investigation and Exchange of Information.**

When warranted, courts encourage early settlement of class actions because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See In re Interpublic Sec. Litig.*, No. 02-cv-6527, 2004 WL 2397190 at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 WL 2208614 at *10 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement). Further, the "stage of proceedings" factor "explores the information that was available to the settling parties to assess whether Class Counsel have weighed their position based on a full consideration of the possibilities facing them." *Berryman v. Avantus, LLC*, No. 3:21-cv-1651-VAB, 2024 WL 2108824, at *8 (D. Conn. May 10, 2024) (internal quotations omitted). Further, the Second Circuit makes clear that engaging in formal discovery is ***not*** a requirement to satisfy the "stage of proceedings" factor. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) ("[T]he district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information. Thus, the 'stage of proceedings' factor also weighed in favor of settlement approval."). Here the Parties acted

responsibly in reaching an early settlement. Despite the early stage of litigation, Plaintiffs here were able to complete a fulsome investigation of the facts to reach a complete understanding of the value of the Action, as well as the attendant risks of continued litigation. Joint Decl. ¶ 59. Indeed, the Parties engaged in significant informal discovery prior to mediation addressing the full scope and impact of the Data Incident, Defendant's remedial efforts following the Data Incident, and a detailed summary of the Data Incident. *Id*. ¶ 60. After a thorough understanding of the Data Incident, it is the strong opinion of proposed Class Counsel that the Settlement presents a favorable result for the Settlement Class. *Id*. ¶ 61.

### 5.    The Reaction of the Settlement Class has Been Positive.

Notice has not yet been issued to the Settlement Class. As such, the Court will have a better opportunity to fully analyze this factor after Notice is disseminated and Settlement Class members are given an opportunity to make claims, opt-out, or object. Nonetheless, Plaintiffs strongly support the Settlement reached here and Class Counsel believes the Settlement is fair, reasonable, and adequate and anticipates a positive reaction from the Settlement Class. *Id*. ¶ 23. This factor weighs in favor of Preliminary Approval.

### 6.    Defendant's Ability to Withstand a Judgment Does Not Prevent the Court from Approving the Settlement as Fair and Reasonable.

"This factor "standing alone, does not suggest that the settlement is unfair," and where the "other *Grinnell* factors weigh heavily in favor of settlement," the Court may still approve of the settlement as being fair, reasonable, and adequate. *Berryman*, 2024 WL 2108824, at *9 (quoting *D'Amato*, 236 F.3d at 86)). Indeed, "a defendant is not required to empty its coffers before a settlement can be found adequate." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2025). Here, although Defendant is likely able to withstand

a greater judgment, the financial obligations the proposed Settlement imposes on it are nonetheless substantial. This factor weighs in favor of preliminary approval.

### C.    The Settlement Should be Approved Under Rule 23(e)(2).

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A)    the class representatives and plaintiffs' counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

These factors largely overlap with the *Grinnell* factors, and thus, also support Preliminary Approval. *See* Section (V)(a),(b), *supra*; *see, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Plaintiffs also state that there is no additional agreement between the Parties that would affect any term of the Agreement. Joint Decl. ¶ 29.

### D.    The Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3),

parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice Program is designed to satisfy Rule 23(e)(1). *See* Agreement at Exs. 1–4. Here, the Settlement Administrator will disseminate direct Notice via a detailed Email Notice or Postcard Notice within 30 days of the Preliminary Approval Order. Agreement ¶ 84. As stated above, Settlement Class Members whose Email Notice bounces back or is undeliverable, or whose email address is not available, will be sent a Postcard Notice, to the extent the Settlement Administrator can identify the postal address of the Settlement Class Member. *Id*. ¶ 85. In addition to individualized Notice via Email Notice or Postcard Notice, the Long Form Notice will also be available to Settlement Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶¶ 87-88. The Settlement Administrator will also make a toll-free telephone line available by which Settlement Class members can seek answers to questions. *Id*. ¶ 49.

The Notice Program is clear, straightforward, and is designed to inform Settlement Class Members of their rights and options under the Settlement. Joint Decl. ¶ 51. The Notice Program clearly defines the Settlement Class; outlines the options available to Settlement Class Members along with the applicable deadlines; presents the essential terms of the Settlement in an accessible and easy-to-understand format; discloses the requested Service Awards for the Class Representatives and the amount of attorneys' fees and costs that proposed Class Counsel intends to seek; explains the procedures for submitting Valid Claims, objections, or requests for exclusion;

provides the information necessary for Settlement Class Members to calculate their individual recovery; and includes the date, time, and location of the Final Approval Hearing. Joint Decl. ¶ 52; *see also* Agreement at Exs.1–3.

The Notice Program is the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the Action, and gives them an opportunity to object or opt-out of the Settlement.  Accordingly, the Notice process should be approved by this Court.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Motion for Preliminary Approval enter the Preliminary Approval Order. A proposed Preliminary Approval Order is attached as ***Exhibit C***.

Dated: September 10, 2025.                              Respectfully submitted,

/s/ *Jeff Ostrow*
Jeff Ostrow (pro hac vice)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
T: 954.332.4200
ostrow@kolawyers.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: 405.235.1560
wbf@federmanlaw.com

*Counsel for Plaintiffs and the Settlement Class*