**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: YALE NEW HAVEN HEALTH SERVICES CORP. DATA BREACH LITIGATION | Case No. 3:25-cv-00609-SRU<br><br>Consolidated Class Action |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT**

Plaintiffs[1] and Class Counsel respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards and Memorandum in Support. In support of this motion, Plaintiffs filed the Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and the Declaration of the Settlement Administrator ("Admin. Decl."), attached as ***Exhibit C***. The Court should enter the Final Approval Order: (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Jeff Ostrow of Kopelowitz Ostrow P.A, Gary M. Klinger of Milberg PLLC, and William B. Federman of Federman & Sherwood as Class Counsel, pursuant to Rule 23(g)(1); (5) confirming the appointment of Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator; (6) awarding Class Counsel $6,000,000.00 for attorneys' fees and $40,223.84 for costs; (7) awarding each Class Representative a $2,500.00 Service Award; (8) overruling any objections; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

---

[1] All capitalized terms herein shall have the same meaning as those defined in Section II of the Settlement Agreement attached as ***Exhibit A***.

## I.    INTRODUCTION

On October 21, 2025, the Court granted Preliminary Approval of the Settlement between Plaintiffs and Defendant and ordered Notice be given to the Settlement Class. ECF. No. 70. Following mediation and extensive arm's-length negotiations, the Parties reached a Settlement providing substantial relief for Plaintiffs and the Settlement Class, including a $18,000,000.00 non-reversionary, all cash Settlement Fund from which Settlement Class Members may elect to receive Cash Payments and/or Medical Data Monitoring, and Defendant's agreement to separately pay for enhanced data security, a substantial non-monetary benefit. Joint Decl. ¶ 38. The Settlement Fund will also be used to pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to Class Counsel, and Service Awards to the Class Representatives. The Settlement will fully and finally resolve all claims in the Action.

Plaintiffs now move the Court for Final Approval and apply for an award of attorneys' fees and costs to Class Counsel and Service Awards to the Class Representatives. The Settlement satisfies all Final Approval criteria. Currently, out of over five million Settlement Class Members, only 19 opted-out of the Settlement, and only one purportedly objected (albeit the objection is procedurally defective and substantively meritless). Admin. Decl. ¶ 33. This overwhelmingly positive response affirms the Court's initial conclusion, outlined in the Preliminary Approval Order, that the Settlement is fair, reasonable, and adequate. Class Counsel fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions, and believe the Settlement fairly resolves their differences. Consequently, the Court should grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Defendant is Connecticut's leading healthcare system with over 4,500 university and

community physicians providing comprehensive, integrated, family-focused care in more than 100 medical specialties. Agreement ¶ 1. Defendant maintained Private Information pertaining to its patients, including, but not limited to, their names, addresses, dates of birth, telephone numbers, email addresses, race or ethnicity, Social Security numbers, patient types, and/or medical record numbers. *Id.*

On March 8, 2025, Defendant detected suspicious activity on its computer systems and confirmed that a criminal third party accessed and acquired information stored on those systems. *Id.* ¶ 2. Subsequently, on March 11, 2025, Defendant posted a statement addressing the Data Incident on its website and informing the public that an unauthorized third-party gained access to Defendant's network. Joint Decl. ¶ 6.

On March 20, 2025, Plaintiff Liparulo filed the first class action lawsuit in the Superior Court for the Judicial District at New Haven for the alleged exposure of his and all similarly situated individuals' Private Information seeking money damages and injunctive relief. Joint Decl. ¶ 7. Following the filing of the state action, Plaintiffs Liparulo's counsel and Defendant's counsel met and conferred regarding the case, and after discussing the impacted population, they collectively determined there was CAFA jurisdiction, and therefore the case should be dismissed and re-filed in federal court. *Id.* ¶ 8. Plaintiff Liparulo then dismissed his state action. *Id.*

On April 14, 2025, Defendant began sending letters to 5,383,557 living individuals advising them that their Private Information may have been impacted in the Data Incident. *Id.* ¶ 9. On April 16, 2025, Plaintiff Nathanson filed the complaint in this Action. ECF No. 1. Plaintiff Liparulo re-filed his complaint in this Court, and Plaintiff Nathanson filed a motion to consolidate the two filed actions and all future related actions. Agreement ¶ 6; ECF No. 4. The Court granted the motion on April 22, 2025, but only as to the two actions. ECF No. 22.

Thereafter, Plaintiffs Nathanson and Liparulo began discussing the prospect of early resolution. Agreement ¶ 8. Although the Parties were unsure if mediation would be fruitful, they went ahead and scheduled a mediation on August 8, 2025, with experienced class action mediator, Bennett G. Picker, Esq. *Id*.

On April 25, 2025, Plaintiffs Nathanson, Liparulo, and Defendant filed a Joint Notice of Mediation and Stipulation to Set Case Deadlines informing the Court of the mediation. ECF No. 27. Additionally, the Parties stipulated to a case schedule setting deadlines for the filing of Plaintiffs' consolidated class action complaint, Defendant's motion to dismiss, Plaintiffs' opposition brief, and Defendant's reply. *Id*. In response, on May 7, 2025, the Court entered a scheduling order. ECF No. 38.

Plaintiffs Nathanson and Liparulo propounded written discovery on the Defendant, including a request for interrogatories and request for production. Agreement ¶ 11. They also participated in a rule 26(f) conference to discuss a proposed litigation schedule and discovery plan. *Id*. In anticipation of discovery, Plaintiffs Nathanson and Liparulo negotiated an electronically stored information protocol and a protective order, which were stipulated to and filed with the Court on May 8, 2025. ECF Nos. 40, 41. The Court approved the protective order on May 9, 2025. ECF No. 42.

Following the filing of the first two actions, 16 additional Related Actions were filed with similar claims seeking to represent the same putative classes as Plaintiffs Nathanson and Liparulo.[2]

---

[2] *Liparulo v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00610; *Harvin v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00612; *Wise v. Yale New Haven Health System*, No. 3:25-cv-00615; *Taylor-Austin v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00632; *Brumfield v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00658; *Adjei, et al. v. Yale New Haven Health*, No. 3:25-cv-00651; *Taylor v. Yale New Haven System*, No. 3:25-cv-00656; *Mott, et al. v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00662; *Wilson v. Yale New Haven Health System*, No. 3:25-cv-00666; *LeMaire v. Yale New Haven Health Services Corp.*, No. 3:25-

Agreement ¶ 12. Over the course of the next few weeks, Plaintiffs' counsel for Nathanson and Liparulo met and conferred with Plaintiffs' counsel in the other 16 Related Actions, and ultimately, they decided to all self-organize and work cooperatively. *Id*. ¶ 13.

Plaintiffs filed a consolidated class action complaint on June 12, 2025, alleging claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of fiduciary duty, and declaratory judgment and injunctive relief. ECF No. 54. On July 16, 2025, Defendant filed a motion to dismiss to which Plaintiffs filed their opposition. ECF No. 61, 66.

In advance of mediation, Plaintiffs requested and Defendant produced informal discovery requests related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident, the categories of Private Information involved, and the security enhancements implemented since the Data Incident to better protect its computer systems from future incidents. Agreement ¶ 16. The Parties also exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, and settlement. *Id.*

On August 8, 2025, the mediation took place both in-person in Philadelphia at Mr. Picker's offices and on Zoom. Joint Decl. ¶ 20. After a full day of arms-length negotiations, the Parties agreed to the material terms of this Settlement which resolves all claims on a classwide basis. *Id.*

The Parties filed a Notice of Settlement and Joint Motion to Stay the Action on August 11, 2025, to which the Court granted the stay for 30 days pending the filing of the Motion for Preliminary Approval. ECF Nos. 67, 68. The Parties spent the next month negotiating the terms of

---

cv-00674; *Quinn v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00679; *Mortensen v. Yale New Haven Health System*, No. 3:25-cv-00690; *Wu v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00691; *Rodriguez v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00714; *Barletta v. Yale New Haven Health System*, No. 3:25-cv-00722; *Snitkoff v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00736; *Ortiz, et al. v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00784; and *Maglione v. Yale New Haven Health System*, No. 3:25-cv-00821.

the Settlement, including the Notice Program and Claims Process, drafting the Agreement and Notices, Claim Form, Preliminary Approval Order, and Final Approval Order, and selecting the Settlement Administrator. Joint Decl. ¶ 22. The Parties signed the Agreement on September 9, 2025. *Id*. Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Class Action Settlement on September 10, 2025, and this Court entered its Preliminary Approval Order on October 21, 2025. ECF Nos. 69, 70. The Notice Program and Claim Process are ongoing in accordance with the Agreement and the Preliminary Approval Order. Admin. Decl. ¶¶ 21-36.

## III.    SUMMARY OF THE SETTLEMENT AND BENEFITS

The following is a summary of the material Settlement terms:

### A.  Settlement Class

The proposed Settlement establishes the following Settlement Class: All living individuals residing in the United States who were sent a notice of the Data Incident indicating that their Private Information may have been impacted in the Data Incident. Agreement ¶ 68. The Settlement Class excludes all (1) all persons who are directors, officers, members, and agents of Defendant, or their respective subsidiaries and affiliated companies, and any entity in which Defendant has a controlling interest; (2) governmental entities; (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident, or who pleads *nolo contendere* to any such charge. *Id.* It also excludes any Settlement Class Member that timely opts-out. *Id.* ¶ 69.

### B.  Settlement Consideration

If approved, the Settlement requires Defendants to create a non-reversionary $18,000,000.00 all cash Settlement Fund. *Id.* ¶ 74. Settlement Class Members may select one of

two types of Cash Payments and may also elect Medical Data Monitoring. *Id.* ¶ 78. Defendants have also implemented substantial and costly additional data security measures that they will maintain in the future. *Id.*

      **1.** ***Cash Payments.*** Settlement Class Members may select either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. *Id.*

      a. <u>Cash Payment A – Documented Losses</u>

      Settlement Class Members may submit a Claim Form selecting Cash Payment A for up to $5,000.00 per Settlement Class Member upon presentment of reasonable documented losses related to the Data Incident. *Id.* ¶ 78.a. Details relating to the types of documentation required are specified in the Agreement, Long Form Notice, and Claim Form. Admin. Decl., Attachments 3-5. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be converted to a Cash Payment B – Alternate Cash claim. Agreement ¶ 78.a.

      b. <u>Cash Payment B – Alternate Cash</u>

      As an alternative to Cash Payment A above, Settlement Class Members may select Cash Payment B, which is a cash payment in the estimated amount of $100.00, subject to *pro rata* adjustments discussed below. Agreement ¶ 78.b.

      **2.** ***Medical Data Monitoring.*** In addition to selecting a Cash Payment, all Settlement Class Members may elect two years of CyEx's medical data monitoring product that will include: (i) real time monitoring of the credit file with one credit bureau; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) security freezing assistance; (iv) victim

assistance; (v) $1,000,000.00 in identity theft insurance with no deductible; and (vi) access to fraud resolution agents to help investigate and resolve instances of identity theft. *Id.* ¶ 78.c.

      **3.** ***Pro Rata Adjustments on Cash Payments.*** All Cash Payments will be subject to a *pro rata*: (a) increase from the Net Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund, or (b) decrease from the Net Settlement Fund if the amount of Valid Claims exhausts the amount of the Net Settlement Fund. *Id.* ¶ 78. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund, after payment of Settlement Administration Costs, any Attorneys' Fees, Costs, and Service Awards, in the following order: (1) payment of Medical Data Monitoring, (2) Cash Payment A – Documented Losses, and (3) Cash Payment B – Alternate Cash. *Id.* Any *pro rata* increases or decreases will be on an equal percentage basis. *Id.*

      **4.** ***Information Security Enhancements***. As the Agreement requires, Defendant provided Class Counsel with a written and signed declaration regarding the security measures, including the cost associated therewith, that it implemented, and has committed to maintain well into the future, to better protect the Settlement Class' Private Information. *Id.* ¶ 78.d.; Joint Decl. ¶ 38. Payment for the security measures is Defendant's obligation separate and apart from the $18,000,000 it has committed to pay to the Settlement Class. Agreement ¶ 78.d. The total cost of the enhancements is substantial and greatly enhances the value of the Settlement. Joint Decl. ¶ 38.

## C.  Residual Funds

      The Settlement is designed to exhaust the Settlement Fund. However, if there are funds remaining in the Settlement Fund 240 days following the date Settlement Class Members are sent an email to select their form of payment, subject to Court approval, the Parties propose that any residual funds be distributed to Connecticut Legal Services. Agreement ¶ 110.

### D.  Releases

In exchange for the Settlement Class Member Benefits, the Releasing Parties will Release the Released Parties from the Released Claims. Agreement ¶¶ 111-114. The Releases are narrowly tailored to the claims made in the Action as a result of the Data Incident. Joint Decl. ¶ 41.

### E.  Attorneys' Fees, Costs, and Service Awards

Pursuant to the Agreement, Plaintiffs and Class Counsel request an attorneys' fee award of $6,000,000 which represents one third of the total $18,000,000 Settlement Fund, along with reimbursement of reasonable and necessary litigation costs totaling $40,223.84. Agreement ¶ 107; Joint Decl. ¶ 48. Plaintiffs also request Service Awards in the amount of $2,500.00 for each Class Representative (for a total of $65,000). Agreement ¶ 108. The awards will be paid out of the Settlement Fund. *Id.* ¶¶ 107-108. The Notices sent to Settlement Class members included the amounts for attorneys' fees and Service Awards that Class Counsel intended to request. Admin. Decl. Attachments 3-5. Attorneys' fees, costs, and Service Awards were not negotiated by the Parties until all other material terms of the Settlement had been determined. Agreement ¶ 109. This Settlement is not contingent on approval of the request for attorneys' fees, costs, and Service Awards and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.*

## IV.    NOTICE PROGRAM, CLAIM PROCESS, OPT-OUTS AND OBJECTIONS[3]

### A.  Notice Program

The Settlement Administrator implemented the Notice Program in full compliance with the Settlement Agreement and the Preliminary Approval Order. Admin. Decl. ¶¶ 18-32. On November

---

[3] The Settlement Administrator sent the required Class Action Fairness Act notices on September 19, 2025. Admin. Decl. ¶ 20.

20, 2025, the Settlement Administrator commenced sending Email Notices to 4,224,653 Settlement Class Members for whom a valid email address was available. *Id.* ¶ 24. Beginning on December 3, 2025, 1,079,727 double Postcard Notices with a detachable address updater were mailed to Settlement Class Members. *Id.* ¶ 26. Postcard Notices are also being sent to identified Settlement Class Members with an associated postal address for whom Email Notices were returned undeliverable. *Id.* Postcard Notices returned undeliverable are remailed to any new addresses provided by the USPS available through USPS information or better addresses found using a third-party address lookup service. *Id.* ¶¶ 27-28. When completed, the Settlement Administrator expects the Notice Program to reach well in excess of 90% of the identified Settlement Class Members, well within the Federal Judicial Center's standard of 70–95%, and will provide a supplemental declaration to Court prior to the Final Approval Hearing with additional details regarding the final reach of the Notice Program and individual notice efforts. *Id.* ¶ 42.

The Email Notice and Postcard Notice clearly and concisely summarized the Settlement, the Settlement Class Members' legal rights, and directed Settlement Class members to the Settlement Website for additional information, including the Long Form Notice, Settlement Agreement, Claim Form, and Claim Process. Admin. Decl., Attachments 3-6. The Long Form Notice, which details the procedures to opt-out or object to the Settlement or to make a Claim, is also available on the Settlement Website and by mail upon a Settlement Class member's request. *Id.*, Attachment 5. Long Form Notices and Claim Forms are mailed to all persons who request one via the toll-free telephone number or other means. As of December 29, 2025, 817 Long Form Notices and Claim Forms were mailed in response to such requests. *Id.* ¶ 29.

The Settlement Website was established on November 19, 2025. *Id.* ¶ 30. The website allows the Settlement Class to review relevant dates and important documents, including the

Settlement Agreement, Preliminary Approval Order, Long Form Notice, Claim Form, and other case-related documents *Id*. It also provides answers to frequently asked questions, contains opt-out and objection instructions, and includes contact information for the Settlement Administrator. *Id*. Claim Forms may be submitted via the Settlement Website. *Id.* As of December 29, 2025, there have been 149,354 unique visitor visits to the Settlement Website, and 564,649 web pages have been presented. *Id*.

The Settlement Administrator established a toll-free telephone line on November 19, 2024, for Settlement Class Members to call and participate in an interactive voice response system to obtain answers to frequently asked questions and to request a Claim package be mailed. *Id*. ¶ 31. The telephone number is prominently displayed on all Notices. As of December 29, 2025, there have been 4,691 calls to the toll-free line, representing 10,119 total minutes of use. *Id.*

Consistent with Fed. R. Civ. P. 23(c)(2)(B), the Notice Program was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). Here, the Notices adequately inform the Settlement Class of the nature of the Action, the Settlement Class definition, the claims at issue, the binding effect of Final Approval and class judgment, and the Settlement Class Members' rights to object, opt-out, and/or enter an appearance through an attorney. Admin. Decl. ¶¶ 37–38, 41-45. The forms of Notice utilized clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the Parties' assistance—is taking all necessary measures to ensure Notice reaches as many Settlement Class members as possible. Thus, the Notice provided has been consistent with the Notice Program the Court approved in its Preliminary Approval Order, satisfies due process considerations of the United States Constitution, and weighs in favor of Final

Approval. *Id.* ¶ 44.

### B. Claim Process

The Claim Process was structured to give all Settlement Class Members adequate time to review the Settlement terms, submit Claims, and decide whether to opt-out of or object to the Settlement. Joint Decl. ¶ 40.  The Claim Process is straightforward, and Settlement Class Members are able to submit Claims through the Settlement Website or by mail to the Settlement Administrator. Agreement ¶¶ 91–99. The Claim Deadline is February 18, 2026. Admin. Decl. ¶ 36. As of December 29, 2025, the Settlement Administrator has received 70,291 Claim Forms (69,923 online and 368 paper). *Id.* Claim Form submissions are still subject to final audits, including the full assessment of each Claim's validity and a review for duplicate submissions. *Id*. Class Counsel are pleased with the current Settlement Class participation rate. Joint Decl. ¶ 40. The percentage of Claims submitted to date is well within the range of what Class Counsel and the Settlement Administrator typically see for similar data breach settlements. Admin. Decl. *Id*. ¶ 36; Joint Decl. ¶ 40.  The number is certain to increase over the next several weeks. *Id.* However, to ensure Settlement Class Members do not miss the opportunity to file a Claim, Reminder Email Notices will be sent in mid-January, 2026 to all Settlement Class Members for whom the Email Notice was not previously undeliverable and who have not yet submitted a Claim Form or opted-out from the Settlement. Admin. *Id*. ¶ 34; Joint Decl. ¶ 40.  Class Counsel will update the Court with the final Claim numbers at the Final Approval Hearing.

### C. Opt-Outs and Objections

The Opt-Out Deadline and Objection Deadline are January 20, 2026. Admin. Decl. ¶ 33. As of December 29, 2025, there have been only 19 opt-outs, some of which are currently incomplete. *Id.* ¶ 33. One procedurally defective and substantively meritless objection has been

received. Admin. Decl., Attachment 7. As argued *infra*, that objection should be overruled.

## V.    SETTLEMENT CLASS CERTIFICATION

For settlement purposes only, the Court's Preliminary Approval Order preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Rule 23(a) and (b)(3), and that the Settlement Class should be certified. ECF No. 70 at 1-2. The Court appointed Plaintiffs as Class Representatives pursuant to Rule 23(e)(2)(A), and Jeff Ostrow of Kopelowitz Ostrow P.A., Gary M. Klinger of Milberg PLLC, and William B. Federman of Federman & Sherwood as Class Counsel pursuant to Rule 23(g)(1). The Court also appointed Epiq Class Action and Claims Solutions, Inc. as the Settlement Administrator and approved the Notice Program and Claim Process. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. ECF. No. 69 at 14-20.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Second Circuit has noted that the policy favoring settlement is strong, "particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d. Cir. 2005). "A district court may approve a settlement proposal that binds class members only 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Moses v. N.Y. Times, Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting Fed. R. Civ. P. 23(e)(2)). In doing so, the Court must consider the following factors:

(A) the class representative and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Common-law criteria preceded the Rule 23(e)(2) factors. *Moses*, 79 F.4th at 242. Courts in the Second Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating the adequacy of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Rule 23(e)(2)'s first two procedural (Rule 23(e)(2)(A)-(B)) and last two substantive considerations (Rule 23(e)(2)(C)-(D)) were "'not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance.'" *Moses*, 79 F.4th at 242-43 (quoting Rule 23(e)(2) Advisory Committee's Note to 2018 Amendment). These factors are to be considered "holistically," with the *Grinnell* factors "remain[ing] a useful framework for considering the substantive fairness of a settlement." *Id.* at 243. Thus, the overlapping Rule 23(e)(2) and *Grinnell* factors are addressed below.

### A. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

In judging the Settlement's procedural fairness, the Court should first consider and conclude the Class Representatives and Class Counsel "have adequately represented the class." Rule 23(e)(2)(A). As with Rule 23(a)(4)'s adequacy of representation requirement, to satisfy Rule

23(e)(2)(A) Plaintiffs must establish (1) there is no antagonism or conflict of interest between the Class Representatives and other members of the Settlement Class; and (2) Class Counsel and Class Representatives are competent, willing, and able to protect the interests of absent Settlement Class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, all Settlement Class Members and the Class Representatives are potentially affected by the same Data Incident and thus have common interests. Joint Decl. ¶ 27. Moreover, Class Representatives have ably represented the Settlement Class, maintaining contact with Class Counsel and answering questions, reviewing and approving pleadings, assisting in the Action's investigation, and reviewing and approving the Settlement documents. *Id.*; *Berryman v. Avantus, LLC*, No. 3:21-cv-1651-VAB, 2024 WL 2108824, at *5 (D. Conn. May 10, 2024) (noting named plaintiff's interests aligned with settlement class and active involvement in the litigation).

Class Counsel have also vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. Joint Decl. ¶ 28. To do so, they relied on their extensive class action experience, including in data breach, their detailed investigation of this Action, and formal and informal discovery exchanged in connection with Settlement negotiations, and ultimately negotiated a favorable recovery for the Settlement Class. *Id.* Class Representatives and Settlement Class Members are all eligible to elect Cash Payments and Medical Data Monitoring payable from the Settlement Fund. Moreover, their Private information will be better protected by Defendant's implementation of security measures, the costs of which are separate from and do not come out of the Settlement Fund. Agreement ¶ 78.d. This weighs in favor of Final Approval. *See Berryman*, 2024 WL 2108824, at *5 (noting the experience of class counsel). As such, Rule 23(e)(2)(A) supports Final Approval.

### B.  The Settlement Was Negotiated at Arm's Length and Aided by a Respected and Experienced Mediator

The next procedural consideration is whether the Settlement was "negotiated at arm's length." Rule 23(e)(2)(B). Recognizing the benefits of early resolution, the Parties began discussing the possibility of settlement. Joint Decl. ¶ 11. The Parties scheduled a mediation session with Bennett Picker, Esq., who has substantial data breach class action mediation experience. *Id*. ¶ 12. Before mediation, the Parties engaged in formal and informal discovery and exchanged mediation briefs, enabling them to better evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses. *Id.* ¶¶ 18-19. On August 8, 2025, the Parties engaged in a full-day, hard-fought mediation session. *Id*. ¶ 20. Under Mr. Picker's guidance, the Parties ultimately agreed on the material Settlement terms. *Id*. ¶ 21. Mr. Picker's involvement further supports the finding of procedural fairness via arm's length negotiations. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019) (Rule 23(e)(2)(B) satisfied because of the involvement of mediator and sophisticated and capable counsel for the parties); *see also Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016); 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 13:50 (4th ed. 2002).

### C.  The Settlement Benefits Provided Are Adequate

Courts consider whether the relief provided for the class is adequate under Rule 23(e)(2)(C) in order to assess the Settlement substantive fairness. This factor overlaps with the first, fourth, fifth, sixth, eighth, and ninth *Grinnell* factors, addressing the complexity, expense, and likely duration of the litigation and the range of reasonableness of the Settlement Fund in light of the best possible recovery and to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Flores v.*

*Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y 2015). As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 (WGY), 2014 WL 3882504, at *6 (D. Conn. July 31, 2024) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The adequacy of the amount achieved in the Settlement should not be judged on the best of all possible worlds, but rather in light of the strengths and weaknesses of the Action. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665-66 (S.D.N.Y. 2015).

Rule 23(e)(2)(C)(i) and the first, fourth, fifth, and sixth *Grinnell* factors support Final Approval. The costs, risks, and delay of trial and appeal are significant in all data security cases, but particularly in cases involving facts such as these. Joint Decl. ¶ 36. While Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. *Id*. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Logan v. Marker Group, Inc*., No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim); *Dougherty, et al. v. Bojangles Restaurants, Inc.*, No. 25-CV-00065, ECF No. 34 (W.D.N.C. Sep. 30, 2025) (dismissing case in its entirety at the pleadings stage). *See also In re Target Corp. Customer Data Sec. Breach Litig*., MDL No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015) (legal issues involved in data breach litigation "are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues."). Plaintiffs also anticipate substantial additional costs should litigation continue, including expert fees and discovery. Joint

Decl. ¶ 37. Plaintiffs would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. *Id*.

Class certification is another hurdle. *See, e.g.*, *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (reversing reinstated class certification); *Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 688 (4th Cir. 2023) (vacating class certification in data breach case); *Theus v. Brinker Int'l, Inc.*, No. 3:18-cv-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification in a data breach case); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No.: 3:20-mn-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (same). To date, to Class Counsel's knowledge, no data breach class action has been tried. Joint Decl. ¶ 37.

Through the Settlement, Plaintiffs and Settlement Class Members avoid these and other risks, including potentially losing at trial, and gain significant Settlement Class Member Benefits avoiding the risk of receiving nothing, if the case continued. The Settlement provides immediate and substantial value, including an $18,000,000.00 non-reversionary all cash Settlement Fund for the benefit of over five million Settlement Class Members. A few recent examples of finally approved data breach settlements demonstrate how this Settlement compares very favorably, and in fact exceeds, many similar common fund data breach settlements. *See, e.g*., *In re CaptureRx Data Breach Litig.,* No. 5:21-cv-00523-OLG (W.D. Tex.) ($4,750,000 common fund for 2,400,000 class members); *Heath, et al. v. Insurance Technologies Corp., et al*., No. 3:21-cv-01444-N (N.D. Tex.) ($11,000,000 common fund for 4,000,000 class members); *Kostka v. Dickey's Barbecue Restaurants, Inc*., No. 3:20-cv-3424 (N.D. Tex.) ($2,350,000 common fund for 725,000 class members); *In re: Berry, Dunn, McNeil & Parker Data Security Incident Litig*., No. 2:24-cv-00146-JAW (D. Me. June 6, 2025) ($7.25 million fund for 2,204,639 class members); *In*

*re Mednax Services, Inc.*, *Customer Data Sec. Breach Litig.*, No. 2021-MD-02994 (S.D. Fla.) ($6 million fund for 2,700,000 class members).

Additionally, given the substantial litigation risks described above, all Settlement Class Members are entitled to Claim a Cash Payment (up to $5,000.00 for documented losses or an estimated $100.00 in alternate cash, both subject to *pro rata* adjustments based on the number of Valid Claims) and Medical Data Monitoring. Those amounts are well within the range of reasonableness of the Settlement Fund in light of the best possible recovery. *Grinnell*, 495 F.2d at 463 (eighth and ninth factors). These dollar amounts are on par with or exceed those approved in other data breach class action settlements. *See, e.g., In re Arthur J. Gallagher Data Breach Litig.*, No. 22-CV-00137 (N.D. Ill.) (final approval of a settlement where class members received $6,000 for documented losses or $100.00 alternate cash and credit monitoring); *Sherwood, et al. v. Horizon Actuarial Services LLC*, Case No. 1:22-CV-01495-ELR (N.D. Ga.) (final approval of a settlement where class members received $5,000 for documented losses or $50.00 alternate cash with no credit monitoring offered). Additionally, Defendant's security enhancements, the costs of which are separate and do not come out of the Settlement Fund, add substantial non-monetary benefits to protect the Settlement Class Members' Private Information. This is an important aspect of the Settlement and Defendant's commitment to implement enhancements was a requirement of the Agreement. The Settlement will effectively distribute the entire Settlement Fund through the robust Claim Process through which the experienced Settlement Administrator will approve Valid Claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Settlement Administrator is reviewing and processing Claim Forms and will provide Claimants with an opportunity to cure any deficiency in their submissions. Agreement ¶ 96; Admin. Decl. ¶ 36. Cash Payments will be made by electronic means or paper check, and emails will be sent with activation codes for Medical Data Monitoring.

Agreement ¶ 82.k.-l.

In *Moses*, 79 F.4th at 244, the Second Circuit addressed Rule 23(e)(2)(C)(iii)'s requirement that the Court take into account "the terms of any proposed award of attorneys' fees." "The symbiotic review of proposed relief and attorneys' fees aligns with '[t]he express goal of [our] Grinnell opinions [which] was to prevent unwarranted windfalls for attorneys.'" *Id.* (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000)). Thus, the Settlement's terms and Class Counsel's attorneys' fee award are required to be reviewed "in tandem." *Id.* In 2025, the Second Circuit went further to "clarify that this tandem analysis of class relief and attorney's fees requires courts to compare the proportion of total recovery allocated to the class to the proportion of total recovery allocated to class counsel." *Kurtz v. Kimberly-Clark Corp.*, 142 F.45th 112, 115 (2d Cir. 2025). Neither *Moses* nor *Kurtz* involved an attorneys' fee request from a non-reversionary, common settlement fund. Here, Class Counsel's requested attorneys' fee of one-third of the non-reversionary, common Settlement Fund does *not* reveal an "imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.45th at 119. As detailed below, a one-third award is regularly granted in this Circuit, including in this District. *See infra* at 31-33.

Rule 23(e)(2)(C)(iv) is satisfied because all Settlement terms are stated in the Agreement.

### D.  The Settlement Treats Settlement Class Members Equitably

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. Joint Decl. ¶ 42. All Settlement Class Members are eligible to submit Claims for the same relief—Cash Payments and Medical Data Monitoring, and all get the benefit of Defendant's security enhancements to protect their Private Information. *Id.* This equitable treatment includes the reasonable Service Awards to the Class Representatives. *Moses*, 79 F.4th at 244-45 (requiring consideration of incentive awards a/k/a service awards when analyzing Rule

23(e)(2)(D)). Accordingly, Rule 23(e)(2)(D) weighs in favor of Final Approval.

**E. The Remaining Grinnell Factors Support Final Approval of the Settlement**

The second *Grinnell* factor addresses the Settlement Class' reaction. "A positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith*, 87 F. Supp. 3d at 663. "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted)). "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *7 (D. Conn. Aug. 4, 2023) (internal citation omitted) (only one objection and few opt-outs).

Here, the Notice Program resulted in over 5,000,000 Settlement Class Members receiving Notice of the Settlement. Admin. Decl. ¶ 23. Although the Opt-Out and Objection Deadlines are January 20, 2026, currently, there have been only 19 opt-outs and only one procedurally defective and substantively meritless purported objection. *Id.* ¶ 33, Attachment 7. These numbers suggest that the Settlement Class is clearly satisfied with the Settlement, weighing strongly in favor of approval of the Settlement.

The sole purported objection is from Settlement Class Member Robert Rodgers, Jr., who is *pro se*. Mr. Rogers' submission is procedurally defective because he also timely submitted his request to opt-out of the Settlement Class. Admin. Decl., Attachment 7. The Agreement's definition of a Settlement Class Member is one who does *not* opt-out. Agreement ¶ 69. An opt-out has no standing to object because it is not taking part in the Settlement and has preserved individual claims. Additionally, the objection does not comply with Paragraph 18.c., e.-j. of the Preliminary

Approval Order.[4] Those reasons alone justify overruling the objection. But, if the Court considers the substance of the objection, it should also be overruled because the Settlement Class Member Benefits are not insufficient given the complexity and risks of the data breach claims. The reasonableness of the Cash Payments is addressed *supra*. Neither the attorneys' fees and costs nor the Service Awards requested will wipe out the *pro rata* Cash Payments. To the contrary, the net distributions to Settlement Class Members will exceed the average recoveries in most data breach class action settlements. The Court awarded attorneys' fees and costs awards will fairly compensate Class Counsel and the Service Awards will fairly recognize the Class Representatives' participation in the Action on behalf of all Settlement Class Members. Finally, Mr. Rogers ignores the substantial security enhancements Defendant agreed to undertake at its own expense to protect Settlement Class Members' Private Information. If any other objection is filed by the deadline, Class Counsel will address it in a separate filing before the Final Approval Hearing.

The third *Grinnell* factor considers the stage of the proceedings and amount of discovery completed, with a "focus[ ] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 and 14-cv-8714-CM, 2015 WL 10847814, at *7 (S.D.N.Y. Sept. 9, 2015). While the Actions is early in litigation, the Parties' negotiations included an exchange of informal discovery before mediation after Plaintiffs served formal discovery requests. Plaintiffs also consulted with liability and damage experts and exchanged mediation briefs before the mediation, enabling the Parties to better and sufficiently evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses. Joint Decl. ¶ 43. Early settlement

---

[4] The objection also does not comply with paragraph 19 of the Preliminary Approval Order, if the objection is not docketed by the Court for Objector's failure to mail it to the Clerk of the Court.

where, as here, the Parties are adequately informed to negotiate is to be commended. *See Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

Finally, as to the seventh *Grinnell* factor, the Defendant's financial obligations under the Settlement are substantial, both to fund the Settlement and separately pay for data security enhancements. While Defendant could withstand a greater judgment than the amount paid in settlement, "'[a] defendant is not required to 'empty its coffers' before a settlement can be found adequate.'" *Berryman*, 2024 WL 2108824, at *9 (citation omitted) "This factor 'standing alone, does not suggest that the settlement is unfair,' and where the 'other *Grinnell* factors weigh heavily in favor of settlement.'" *Id.* (citation omitted).

Based on the foregoing analysis, the Court should conclude the Settlement is fair, reasonable, and adequate. Thus, Final Approval should be granted.

## V.    APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A.  Legal Standard for Attorneys' Fees

Plaintiffs' attorneys in a successful class action lawsuit may petition the Court for compensation relating to any benefits to the Class that result from the attorneys' efforts. *See, e.g., Boeing Co. V. Van Gemert*, 444 U.S. 472 (1980). Rule 23(h) of the Federal Rules of Civil Procedure expressly states that in a certified class action the Court may award "reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Pursuant to *Boeing*, Courts in the Second Circuit favor the use of the percentage of the settlement approach. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d

Cir. 2005); *McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) ("the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation[.]").]

Courts in this Circuit have found numerous advantages to using the percentage method of awarding attorneys' fees. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve a case efficiently to create the largest total value for the class. *Wal-Mart Stores, Inc.*, 396 F.3d at 121.

Second, this method is aligned with market practices, as it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell v. Bovis Lend Lease, Inc*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *10 (S.D.N.Y. April 16, 2012) (opining "[the percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (noting the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.").

Third, the percentage method promotes efficiency and early resolution, as it eliminates any incentive plaintiffs' lawyers may have to run up billable hours—one of the most significant downsides to using the lodestar approach. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citing *In re Union Carbide Corp., Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp.

160, 167-168 (S.D.N.Y. 1989)).

Finally, the percentage method preserves judicial resources because it relieves the "cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie*, 166 F.3d at 461 n.4 (quoting *Third Circuit Task* Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 258 (3d Cir. 1985)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48-49. One New York district court noted:

> [The percentage method is] bereft of the largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious litigation.

*In re Union Carbide Corp., Cons. Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989).

While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50. In fact, consideration of the lodestar is not mandatory when awarding attorneys' fees under the percentage method. The Second Circuit held a district court "did not abuse its discretion in *disregarding counsel's lodestar computation*, and instead calculating a reasonable attorney's fee by the 'percentage of the fund' method." *Cline v. TouchTunes Music Corp.*, 765 Fed. Appx. 488, 492 (2d Cir. 2019) (quoting *Goldberger*, 209 F.3d at 50) (emphasis added).

Regardless of whether the percentage of the fund or lodestar method is used, courts in the Second Circuit evaluating the reasonableness of a fee request consider: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. Class Counsel respectfully submit that the Court should apply the percentage of the fund method here and, under the

*Goldberger* factors, the attorneys' fee request is reasonable and warrants approval by the Court.

### B. The *Goldberger* Factors Support the Requested Attorneys' Fee Award

The requested attorneys' fees will compensate Class Counsel for their investment of time, expertise, and capital, which produced an extraordinarily successful outcome for the Settlement Class in a case that was novel, complex and high risk. *In re State Police Litig.*, No. 5:89-cv606 (AHN), 1999 U.S. Dist. LEXIS 21491, at *20 (D. Conn. Dec. 2, 1999) ("Courts in the Second Circuit have granted requests for attorneys fees of between 15% to 50% of the entire settlement fund in class actions."). Each of the six *Goldberger* factors weigh in favor of granting Class Counsel's request for attorneys' fees of one-third of the Settlement Fund.

#### 1. The Time and Labor Expended

The Action required extensive time and labor by Class Counsel and other Plaintiffs' counsel who assisted in prosecuting the Action. Joint Decl. ¶ 57. The time committed is not surprising given the breadth and scope of the Action and the tasks required. Class Counsel and other Plaintiffs' Counsel each investigated the Data Incident, interviewed potential clients, drafted separate class action complaints to initiate litigation for their plaintiffs, and then worked together to consolidate the 18 related actions and file a Consolidated Complaint. *Id.* As litigation commenced, Class Counsel, with the support of Plaintiffs' other counsel, coordinated the litigation schedule with defense counsel; analyzed topics for discovery; prepared and propounded discovery, consulted with experts, drafted and negotiated the ESI protocol and a stipulated protective order that the Court approved, filed an opposition to the Motion to Dismiss, conducted settlement negotiations, interviewed prospective settlement administrators and retained Epiq for this Settlement, drafted the Settlement Agreement, designed the Notice Program and Claim Process and drafted the Notices and Claim Form; prepared and filed Plaintiffs' Motion and Memorandum

of Law in Support of Preliminary Approval of the Settlement; and worked with the Settlement Administrator and Defendant's counsel to effectuate the Notice Program and the Claim Process. *Id.* Class Counsel also prepared and filed this Motion. *Id.* ¶ 58. Their work will continue in preparation for and attending the Final Approval Hearing, and responding to any other objections, if filed, before that hearing. *Id.* Class Counsel estimate an additional 50 hours will be spent following the filing of this motion through the completion of Settlement administration. *Id.* ¶ 59.

A lodestar crosscheck also supports the requested attorneys' fee. As noted above, the lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). Accordingly, the lodestar method is used in this Circuit only "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Id.* "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. In *Kornell v. Harverhill Ret. Sys.*, 790 Fed. Appx. 296, 298-99 (2d Cir. 2019), the Second Circuit held district courts can rely on total hours for the lodestar crosscheck and "'the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11'" (citing *Goldberger*, 209 F.3d at 50).

The combined lodestar to date equals $1,019,841.75. Joint Decl. ¶ 59. Class Counsel has calculated that their total lodestar yields a modest multiplier of 5.88, which is well within the range accepted by courts in the Second Circuit. *See id*. In fact, courts in this jurisdiction regularly award lodestar multipliers as high as eight times the lodestar. *See Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher

multipliers." (collecting cases and citations omitted)); *Kiefer*, 2014 WL 3882504, at *9 (same).
*See also, e.g.*, *James v. China Grill Mgmt.*, No. 18 Civ. 455 (LGS), 2019 WL 1915298, at *3
(S.D.N.Y. Apr. 30, 2019) (collecting cases with multipliers between 2 and 4.9); *Maley v. Del
Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding percentage method
with cross-check lodestar multiplier of 4.65, which was "well within the range awarded by courts
in this Circuit and courts throughout the country," and citing cases with a 7.7 multiplier and 5.5
multiplier); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers
between two to six."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623–24 (S.D.N.Y.
2012) (same); Also, the lodestar multiplier will ultimately be lower when Class Counsel complete
the additional work required to obtain Final Approval and to ensure the Settlement terms are fully
implemented. Joint Decl. ¶ 59; *Kiefer*, 2014 WL 3882504, at *9.

## 2. The Magnitude and Complexity of Litigation

"The size and difficulty of the issues in a case are significant factors to be considered in
making a fee award." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013)
(citation omitted). *See also Berryman*, 2024 WL 2108824, at *12; *Edwards v. North Am. Power
& Gas, LLC*, No. 3:14-cv-01714 (VAB), 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018)
(noting large settlement class, multi-million dollar settlement fund for complex theory of liability).
In cases that require more expertise, a larger percentage of the fund should be awarded to the
lawyers who can competently prosecute the case. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp.
2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation
also weigh in favor of a significant award.").

Class Counsel knew from their initial investigations that this Action would involve
extensive research on challenging and complex legal and factual claims in this unique data security

class action. Joint Decl. ¶ 36. Data security and data breach cases across the country are presenting novel issues to the courts for consideration. Class Counsel were also aware that pursuing this case beyond settlement would likely be lengthy and expensive, requiring discovery, motion practice, trial, and potential appeals. *Id.* ¶ 36.  All of this would require thousands of hours of work, resulting in significant costs. Ultimately, beyond the time litigating the matter up to this point, though there is more work to do, including preparing for and appearing at the Final Approval Hearing and overseeing Settlement administration *Id.* ¶ 31. Thus, the magnitude and complexity of the Action is significant, favoring the requested attorneys' fee award.

### 3.  The Risk of Litigation

As detailed above, Class Counsel and other Plaintiffs' Counsel undertook significant risk in accepting their representation of the Plaintiffs and the Settlement Class Members on an entirely contingent basis, supporting the requested attorneys' fee award. *Id.* ¶ 52. The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). *See also In re Frontier Commc'ns Corp.*, No. 3:17-cv-01617-VAB, 2022 WL 4080324, at *44 (D. Conn. May 20, 2022) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.") (citation omitted)). Class Counsel and the other Plaintiffs' Counsel took on the risks of litigation knowing full well their efforts might not bear fruit. Joint Decl. ¶ 52. Fees were not guaranteed. *Id*. This case involved complexities of data breach that are novel and evolving, and the risk of non-payment is especially high in class actions with contingent fee arrangements, like this data breach case.

"It is well-established that litigation risk must be measured as of when the case is filed."

*Goldberger*, 209 F.3d at 55. While Plaintiffs were confident that their claims would prevail, they faced several strong legal defenses. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Settlement Class Members. As explained above in support of Final Approval of the Settlement, if this matter proceeded further, Plaintiffs and thus Class Counsel would bear considerable, additional risks, including the uncertainty of contested class certification and the possibility of an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f), dispositive motions, and potential appeals, not to mention trial. *See supra*, at 17-18.

Plaintiffs' Counsel were able to secure a significant Settlement for the Settlement Class Members for complex claims asserted against Defendant. This was done despite the significant risks Plaintiffs faced in pursuing these claims. As such, the Settlement is a direct result of Class Counsel's and other Plaintiffs' Counsel's skills and dedication in this Action. Accordingly, this factor weighs in favor of approving the requested percentage of the common fund.

### 4. The Quality of Representation

In determining the quality of representation, courts examine the experience of the attorneys involved and the result obtained in the lawsuit. *See Berryman*, 2024 WL 2108824, at *12 ("The Second Circuit has held that 'the quality of representation is best measured by results' (quoting *Goldberger*, 209 F.3d at 55)). Here, Class Counsel and Plaintiffs' Counsel have extensive experience in both class actions generally, and complex consumer class actions involving cybersecurity incidents in particular. Joint Decl. ¶ 29. It required significant skill and experience, as well as high quality representation, to even be able to identify the issues of Article III standing and the highly technical aspects of the data breach mechanism (*i.e.,* the means by which Defendant's systems were breached), not to mention the specialized knowledge of class action procedure required to achieve certification, let alone settlement. Defendant is also ably represented

by a national law firm with extensive data breach litigation experience, presenting a formidable adversary for Plaintiffs and Class Counsel to successfully prosecute the Action in the absence of the Settlement. *Id.* ¶ 50.

With respect to the results achieved for the Settlement Class, as discussed above, they are undoubtedly exemplary. Defendant has agreed to establish an $18,000,000.00 cash Settlement Fund to provide benefits to the Settlement Class that will directly address the harm they suffered as a result of the Data Incident, including reimbursement documented monetary losses and *pro rata* cash payments. *Id*. ¶ 38. The Settlement also provides the option to enroll in Medical Data Monitoring. *Id*. Finally, Defendant has implemented and will continue to maintain enhanced data security measures to better protect the Settlement Class' Private Information. *Id*.

Given the quality of Class Counsel's representation, as evidenced by the excellent Settlement achieved for the Settlement Class, this factor supports the requested attorneys' fee award.

### 5.  The Requested Fee in Relation to the Settlement

Compensation of one-third of the Settlement Fund is consistent with the proportion of common funds awarded as fees in other class action settlements within the Second Circuit, including in this District. *See, e.g.*, *In re Aggrenox Antitrust Litig.*, No. 3:14 MD 2516 (SRU), 2018 WL 10705542, at *5 (D. Conn. 2018) (Underhill, J.) (awarding one-third of common fund); *Kiefer*, 2014 WL 3882504, at *9 (one-third of common fund "is reasonable and 'consistent with the norms of class litigation in this circuit.'" (quoting *Aros v. United Rentals, Inc.*, No. 3:10-cv-73 (JCH), 2012 WL 3060470, at *6 (D. Conn. July 26, 2012)); *Macedonia Church v. Lancaster Hotel, LP*, No. 05-0153 (TLM), 2011 WL 2360138, at *14 (D. Conn. June 9, 2011) ("Class Counsel's request for 33-1/3% of the Settlement Fund is typical in class action settlements in the Second Circuit.");

*Menkes v. Stolt-Nielsen S.A.*, No. 3:03-CV-00409 (DJS), 2011 WL 13234815, at *4-5 (D. Conn. Jan. 25, 2011) (awarding one-third of common fund); *Collins v. Olin Corp.*, No. 3:03-cv-945 (CFD), 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) (same).

In addition, awarding "a one-third fee also aligns with those awarded by other courts in data breach class action cases" around the country. *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565 , *6 (D. Kan. Dec. 19, 2024) (awarding one-third fee, and collecting data breach cases from around the country); *In re Arthur J. Gallagher Data Breach Litig.*, No. 22-CV-00137, ECF No. 128 (N.D. Ill.) (Feb. 27, 2025) (awarding one-third of $21 million settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (one-third of settlement fund). *See also, e.g.*, *In re Tenet Healthcare*, Cause No. DC-22-07513 (Dist. Ct. Dallas County, Tex. May 22, 2024) (35% of settlement fund); *Garza v. HealthAlliance, Inc*., No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (same); *McNally, et. al. v. Infosys McCamish Systems, LLC*, No. 1:24-CV-00995-JPB (N.D. Ga.), ECF No. 81 (one-third of settlement fund); *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 2675178, at *13-14 (S.D. Fla. Sept. 17, 2025) (same); *In re Fortra File Transfer Software Data Sec. Breach Litig*., No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (same); *In re CorrectCare Data Breach Litig*., No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Phillips et al. v. Bay Bridge Associates*, Case 1:23-cv-00022-DAE (W.D. Tex. July 30, 2024), ECF No. 53 (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, No. 1:22-CV-296, 2024 WL 3203226, *16 (M.D.N.C. June 27, 2024) (awarding one-third of common fund because this amount was "comparable to awards in other data privacy class actions"); *Kondo, et al. v. Creative Services, Inc*., No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same); *Thomsen v. Morley Cos*., No. 1:22-cv-10271, 2023 WL 3437802, *2

(E.D. Mich. May 12, 2023) (one-third of common fund "apt because it reflects counsel's specialization in data breaches and simplifies the billing"); *In re Sovos Compliance Data Security Incident Litigation*, No. 1:23-cv-12100 (D. Mass.), ECF No. 12 (same). Thus, this factor supports Class Counsel's attorneys' fee request.

### 6. Public Policy Considerations

Public policy supports providing attorneys' fees in class action cases, as class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Where, as here, the Settlement amount is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005). If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.* Public policy is in favor of rewarding counsel who persevere through risky litigation and achieve favorable results for the class they represent. "Contingent-fee arrangements will encourage other attorneys to accept and prosecute cases on behalf of individuals who have sustained injuries similar to those of the plaintiffs in this case." *Collins*, 2010 WL 1677764, at *6. Here, Class Counsel and Plaintiffs' Counsel took on this Action despite the uncertainty and volatility of law pertaining to consumer class actions, especially data breach cases, in obtaining a settlement allowing for Settlement Class Members to receive Cash Payments and Defendant's agreement to improve its data security. Such a result should be rewarded.

### C. The Requested Litigation Costs are Reasonable

Class Counsel's efforts have resulted in substantial common benefits to the Settlement Class. In doing so, they incurred reasonable and necessary out-of-pocket litigation costs totaling $40,223.84 for filing fees, service fees, *pro hac vice* applications, mediation fees, expert fees, and travel and accommodation expenses. Joint Decl. ¶ 60. Under Federal Rule of Civil Procedure

23(h), the Court may award "nontaxable costs that are authorized by law or by the parties' agreement." The requested costs are reasonable in light of the nature of the action and the tasks that needed to be performed. *See, e.g.*, *Kiefer*, 2014 WL 3882504, at *10 (awarding reimbursement of litigation expenses that included court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and plaintiff's share of mediation fees).

### D.  Plaintiffs' Requested Service Awards are Justified and Should be Approved

In *Moses*, the Second Circuit reaffirmed that service awards (a/k/a incentive awards) are permitted. 79 F.4th at 256. "Incentive awards encourage class representatives to participate in class action lawsuits, which are 'designed to provide a mechanism by which persons, whose injuries are not large enough to make pursuing their individual claims in the court system cost efficient, are able to bind together with persons suffering the same harm and seek redress for their injuries.'" *Id.* at 253. For their commitment to the Action, the Class Representatives reasonably seek $2,500 each ($65,000 total).

Service awards are commonly awarded in class actions to compensate plaintiffs for the time and effort expended in assisting with the prosecution of case, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained. *Simerlein v. Toyota Motor Corp.*, No. 3:17-cv1091 (VAB), 2019 WL 96742, at *76 (D. Conn. June 10, 2019). Plaintiffs here have been instrumental in assisting Class Counsel throughout this proceeding as Class Representatives. Joint Decl. ¶ 47. They initiated and remained in contact with Class Counsel and the other Plaintiffs' counsel, considered and reviewed the pleadings in this case and the Agreement, supervised and monitored Class Counsel, provided background documents, and followed the litigation's progress to ensure the Settlement Class received the best recovery possible, given the circumstances and

risks of the Action. *Id.* The Class Representatives were prepared to complete their responsibilities, including being deposed and testifying at trial, if needed. *Id.*

The $2,500 Service Awards requested are reasonable and modest, relative to awards regularly granted by courts in this Circuit and in this District. *See, e.g.*, *In re Aggrenox Antitrust Litig.*, 2018 WL 10705542, at *5 (Underhill, J.) ($10,000 service awards to class representatives); *Berryman*, 2024 WL 2108824, at *13-14 ($7,500.00 service award); *Edwards*, 2018 WL 3715273, at *13 ($5,000.00 service award); *McLaughlin v. IDT Energy*, No. 14-cv-417 (ENV) (RML), 2018 WL 3642627, at *20 (E.D.N.Y. July 30, 2018) ("Courts in this circuit regularly approve service awards, ranging from as low as $1,000 to as high as $25,000, in consumer class action settlements; generally, however, award between $1,000 and $10,000 are more typical." (collecting cases)).

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs and Class Counsel respectfully request this Court enter an order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) affirming the appointment of Plaintiffs as Class Representatives; (4) affirming the appointments of Jeff Ostrow, Gary M. Klinger, and William Federman as Class Counsel; (5) affirming the appointment of Epiq as Settlement Administrator; (6) awarding Class Counsel $6,000,000 in attorneys' fees and $40,223.84 for costs; (7) awarding Class Representatives $2,500 each as Service Award; (8) overruling the purported objection, as well as any other timely and properly filed objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. A proposed Final Approval Order is attached for the Court's convenience as ***Exhibit D***.[5]

---

[5] This proposed order is Exhibit 6 to the Agreement.

Dated: January 2, 2026.                    Respectfully submitted,

                                           /s/ *Jeff Ostrow*
                                           Jeffrey Ostrow (*pro hac vice*)
                                           **KOPELOWITZ OSTROW P.A.**
                                           One West Las Olas Blvd., Suite 500
                                           Fort Lauderdale, FL 33301
                                           Tel: 954-332-4200
                                           ostrow@kolawyers.com

                                           Gary M. Klinger (*pro hac vice*)
                                           **MILBERG PLLC**
                                           227 W. Monroe Street, Suite 2100
                                           Chicago, IL 60606
                                           Tel: 866.252.0878
                                           gklinger@milberg.com

                                           William B. Federman (*pro hac vice*)
                                           **FEDERMAN & SHERWOOD**
                                           10205 N. Pennsylvania Ave.
                                           Oklahoma City, OK 73120
                                           Tele: 405.235.1560
                                           wbf@federmanlaw.com

                                           *Class Counsel*


## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2026, I filed the foregoing document with the Court via CM/ECF.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                           /s/ *Jeff Ostrow*
                                           Jeff Ostrow