# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: YALE NEW HAVEN HEALTH SERVICES CORP. DATA BREACH | Case No. 3:25-cv-00609 |

**JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

We, Jeff Ostrow, Gary M. Klinger, and William B. Federman pursuant to Fed. R. Civ. P. 23(a), (b)(3), (e), and (h) hereby declare as follows:

1.      We are Class Counsel[1] for the Settlement Class in this Action. We submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

**Background and Procedural History**

2.      This Action arises from a Data Incident that Plaintiffs allege compromised the Private Information of over five million individuals. Under the proposed Settlement, as set forth in the Agreement and its accompanying exhibits, Defendant has agreed to an $18 million non-reversionary all cash Settlement Fund for the benefit of the Settlement Class. Defendant will also provide substantial and valuable non-monetary relief in the form of enhanced data security measures that Defendant is implementing in the wake of the Data Incident at its own expense.

3.      Defendant is Connecticut's leading healthcare system with over 4,500 university

---

[1] All capitalized terms used in this joint declaration shall have the same meanings as set forth in the Settlement Agreement, attached as Exhibit A to the Motion for Preliminary Approval.

and community physicians providing comprehensive, integrated, family-focused care in more than 100 medical specialties.

4.     Defendant maintained Private Information pertaining to its patients, including, but not limited to, their names, addresses, dates of birth, telephone numbers, email addresses, race or ethnicity, Social Security numbers, patient types, and/or medical record numbers. Those patients are the Plaintiffs and other Settlement Class Members.

5.     On or about March 8, 2025, Defendant noticed suspicious activity on its computer systems and confirmed that cybercriminals accessed and acquired information stored on those systems.

6.     Subsequently, on March 11, 2025, Defendant posted a statement addressing the Data Incident on its website and informing the public that an unauthorized third-party gained access to Defendant's network.

7.     On March 20, 2025, Plaintiff Liparulo filed the first class action lawsuit in the Superior Court for the Judicial District at New Haven for the alleged exposure of his and all similarly situated individuals' Private Information seeking money damages and injunctive relief.

8.     Following the filing of the state action, Plaintiffs Liparulo's counsel and Defendant's counsel met and conferred regarding the case, and after discussing the impacted population, they collectively determined there was CAFA jurisdiction, and therefore the case should be dismissed and re-filed in federal court. Plaintiff Liparulo then dismissed his state action.

9.     On April 14, 2025, Defendant began sending letters to 5,383,557 living individuals advising them that their Private Information may have been impacted by the Data Incident.

10.     On April 16, 2025, Plaintiffs Jon Nathanson and Michael Liparulo filed the first two class action lawsuits relating to the Data Incident in this Court. On the same day, Plaintiff

Nathanson filed a motion to consolidate the *Nathanson* and *Liparulo* actions, and on April 22, 2025, the *Liparulo* action was consolidated into the *Nathanson* action.

11.    Thereafter, Plaintiffs Nathanson and Liparulo and Defendant began discussing exchanging information about the intrusion and unauthorized access to its computer systems, Defendant's document retention and preservation, and the prospect of early resolution.

12.    Although the Parties were unsure if mediation would be fruitful, they went ahead and scheduled a mediation on August 8, 2025, with Bennett G. Picker, Esq. of Stradley Ronon Stevens & Young LLP, a well-respected mediator with extensive experience mediating data breach class actions and complex cases. A mediation notice was filed on April 25, 2025.

13.    Plaintiffs Nathanson and Liparulo also participated in a Fed. R. Civ. P. 26(f) conference with Defendant to discuss a proposed litigation schedule and discovery plan.

14.    After the *Nathanson* and *Liparulo* actions were filed, 16 additional related actions were filed in this Court relating to the Data Incident.[2]

15.    While working to move the litigation forward, counsel for Plaintiffs Nathanson and Liparulo met and conferred with Plaintiffs' counsel in the Related Actions, and ultimately, they decided to self-organize and work cooperatively.

---

[2] *Liparulo v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00610; *Harvin v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00612; *Wise v. Yale New Haven Health System*, No. 3:25-cv-00615; *Taylor-Austin v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00632; *Brumfield v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00658; *Adjei, et al. v. Yale New Haven Health*, No. 3:25-cv-00651; *Taylor v. Yale New Haven System*, No. 3:25-cv-00656; *Mott, et al. v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00662; *Wilson v. Yale New Haven Health System*, No. 3:25-cv-00666; *LeMaire v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00674; *Quinn v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00679; *Mortensen v. Yale New Haven Health System*, No. 3:25-cv-00690; *Wu v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00691; *Rodriguez v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00714; *Barletta v. Yale New Haven Health System*, No. 3:25-cv-00722; *Snitkoff v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00736; *Ortiz, et al. v. Yale New Haven Health Services Corp.*, No. 3:25-cv-00784; and *Maglione v. Yale New Haven Health System*, No. 3:25-cv-00821.

16.    As such, Plaintiffs collectively filed a Consolidated Class Action Compliant on June 12, 2025, alleging the following causes of action on behalf of themselves and a nationwide class: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) unjust enrichment; (v) breach of fiduciary duty; and (vi) declaratory judgment. On July 16, 2025, Defendant filed a motion to dismiss to which Plaintiffs filed their opposition.

17.    In accordance with the Court's scheduling order, Plaintiffs Nathanson and Liparulo propounded written discovery on Defendant, including interrogatories and requests for production of documents. In anticipation of discovery, Plaintiffs Nathanson and Liparulo negotiated an electronically stored information protocol and a protective order, which were stipulated to and filed with the Court on May 8, 2025. The Court approved the protective order on May 9, 2025.

18.    Furthermore, in anticipation of mediation, Plaintiffs informally requested and Defendant produced information related to liability and damages, including, but not limited to, the number and locations of individuals impacted by the Data Incident, the categories of Private Information involved, the security enhancements Defendant implemented following the Data Incident to better protect its computer systems from future incidents, and a detailed explanation of the Data Incident.

19.    The Parties also exchanged detailed Mediation Statements outlining their positions with respect to liability, damages, comparable case settlements and settlement positions.

20.    On August 8, 2025, the Parties participated in an all-day mediation with all Plaintiffs' counsel having the opportunity to participate in person at Mr. Picker's offices or virtually via Zoom.

21.    After a full day of arms-length negotiations, the Parties agreed to the material terms of this Settlement which resolves all claims on a classwide basis and is memorialized in the

Agreement.

22.     The Parties filed a Notice of Settlement and Joint Motion to Stay the Action on August 11, 2025, to which the Court granted a stay for 30 days pending the filing of the Motion for Preliminary Approval. The Parties spent the next month negotiating the finer points of the Settlement, including the Notice Program and Claims Process, drafting the Agreement, Notices, Claim Form, Preliminary Approval Order, and Final Approval Order. Plaintiffs also contacted several well-known settlement administrators to obtain bids for providing notice and administration before selecting the Settlement Administrator.

23.     The Parties signed the Agreement on September 9, 2025. There is no additional agreement between the Parties that would affect any term of the Settlement.

24.     Following entry of the Preliminary Approval Order on October 21, 2025, Class Counsel have worked diligently with the Settlement Administrator and Defendant to implement and complete the Notice Program and Claim Process, which are ongoing.

**Facts Supporting Final Approval of the Settlement**

25.     The Settlement is fair, reasonable, and adequate. It was negotiated at arm's-length with the assistance of Mr. Picker, an experienced data breach class action mediator.

26.     If approved, the Settlement will bring certainty, closure, and significant relief to Settlement Class Members. Absent approval of the Settlement, the Parties face extended and costly litigation, and there is a substantial risk that Settlement Class Members will ultimately receive no relief whatsoever.

27.     The Settlement Class is adequately represented. All Settlement Class Members and the Class Representatives are potentially affected by the same Data Incident and thus have common interests. Moreover, Class Representatives have ably represented the Settlement Class,

maintaining contact with Class Counsel and answering questions, reviewing and approving pleadings, assisting in the Action's investigation, and reviewing and approving the Settlement documents.

28.    Class Counsel have vigorously pursued the Settlement Class' interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, they relied on their extensive class action experience, including in data breach litigation, their detailed investigation of this Action, formal and informal discovery exchanged in connection with Settlement negotiations, and ultimately negotiated a favorable recovery for the Settlement Class.

29.    At the Preliminary Approval stage, the Court considered that Class Counsel are highly qualified and have a great deal of experience litigating complex consumer class actions, including in the data privacy context. They have decades of combined experience. Their respective resumes were presented to the Court. Class Counsel's extensive experience in data breach litigation made them keenly aware of the strengths and weaknesses of litigating the Action.

30.    Class Counsel worked cooperatively and efficiently and have devoted extensive time and resources to this case. This work has included: (a) fully investigating the facts and legal claims, including interviewing and vetting the Plaintiffs and others impacted by the Data Incident; (b) obtaining and reviewing documents from Plaintiffs substantiating their claims; (c) drafting and preparing the complaints for Plaintiffs Nathanson and Liparulo originally filed in the Superior Court of Connecticut and then re-filed in this Court; (d) working with Plaintiffs' counsel in the 16 Related Actions to file a comprehensive Consolidated Complaint in this Court; (e) regularly communicating with the named Plaintiffs to keep them informed of the progress in the Action and settlement; (f) responding to Defendant's motion to dismiss; (g) formally and informally

requesting, obtaining, and reviewing documents and information from Defendant regarding the Data Incident, Defendant's remedial measures after the Data Incident, and Defendant's cyber insurance status; (h) drafting and negotiating a comprehensive ESI protocol and stipulated protective order; (i) identifying and consulting with expert witnesses; (j) participating in settlement negotiations with Defendant prior to and during the mediation; (k) soliciting bids from settlement administrators and working with Defendant to select the Settlement Administrator; (l) negotiating and drafting the Settlement Agreement, including developing the Notice Program and Claim Process with the Settlement Administrator's assistance in drafting the Notices and Claim Form, and drafting the proposed Preliminary Approval Order and Final Approval Order; (m) researching and preparing the Motion for Preliminary Approval; (n) regularly working and communicating with the Settlement Administrator and Defendant to implement and complete the Notice Program and Claim Process; (o) communicating with Settlement Class Members; and (p) researching and preparing the Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards.

31.    Class Counsel will spend more time preparing for and attending the Final Approval Hearing, and then working with the Settlement Administrator and Defendant to fully implement the Settlement terms following Final Approval, ensuring that all Settlement Class Member Benefits are properly distributed.

32.    There was no fraud or collusion in entering into the Settlement, which was entered into after extensive arm's-length negotiations and with the assistance of an experienced and well-respected mediator.

33.    Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Notwithstanding their

confidence in the merits of the claims, Plaintiffs and Class Counsel recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and Defendant's various defenses as to standing, liability, and other affirmative defenses.

34.     Defendant, who is represented by very competent national counsel, has maintained its position that Plaintiffs cannot state a claim for relief, that a class could not be certified, that it would not be found liable at trial, and that Plaintiffs would not be able to prove damages resulting from the Data Incident. While they disagree with Defendant's views, Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here.

35.     The available Settlement Class Member Benefits are more than reasonable, given the complexity of the Action and the significant risks and barriers that loomed in the absence of settlement. The likelihood of success in the absence of the Settlement is uncertain.

36.     The costs, risks, and delay of trial and appeal are significant in all data security cases and cannot be disregarded. Recovery, if any, by any means other than settlement would require additional years of litigation. Without the Settlement, the Parties faced the possibility of litigating this Action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals. Continued litigation could impede the successful prosecution of these claims at the class certification, trial, and appellate stages, resulting in zero monetary and non-monetary benefits to the Settlement Class. The Court had not yet certified a class at the time the Agreement was executed, making it unclear whether certification of a litigation class would be granted.

37.     Plaintiffs and Class Counsel anticipate substantial additional costs should litigation

continue, including expert fees and discovery. Plaintiffs would need to defeat the motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. To date, to Class Counsel's knowledge, no data breach class action has been tried.

38. The Settlement provides for both monetary relief and non-monetary relief. From the $18,000,000 non-reversionary, all cash Settlement Fund, Settlement Class Members will have the opportunity to receive Cash Payment and/or two years of Medical Data Monitoring. For Cash Payments, the can elect of up to $5,000.00 for Documented Losses arising from the Data Incident or, in the alternative, an estimated $100.00 cash payment. The Cash Payments are subject to *pro rata* adjustments (increases or decreases) depending on the amounts of the Valid Claims. Defendant has also agreed to separately pay for enhanced data security that will protect the Private Information of Settlement Class Members in the future. Defendant has provided a confidential declaration to Class Counsel summarizing the enhancements made to date and the associated costs. The total cost of the enhancements is substantial and greatly enhances the value of the Settlement.

39. The Settlement Fund will also pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to Class Counsel, and Service Awards to the Class Representatives.

40. The Claim Process was structured to give all Settlement Class Members adequate time to review the Settlement terms, submit Claims, and decide whether to opt-out of or object to the Settlement. The Claim Process is straightforward, and Settlement Class Members are able to submit Claims through the Settlement Website or by mail to the Settlement Administrator. Class Counsel are pleased with the current Settlement Class participation rate. The percentage of Claims submitted to date is well within the range of what Class Counsel typically see for similar data

breach settlements. The number of Claims is certain to increase over the next several weeks. However, to ensure Settlement Class Members do not miss the opportunity to file a Claim, Reminder Email Notices will be sent in mid-January, 2026 to all Settlement Class Members for whom the Email Notice was not previously undeliverable and who have not yet submitted a Claim Form or opted-out from the Settlement.

41.    The Settlement Class Members have overwhelmingly reacted positively to it. The Settlement will avoid further delay in providing relief to the Settlement Class and expensive and protracted litigation with uncertain results. In exchange for the Settlement Class Member Benefits, Plaintiffs and all Settlement Class Members will release Defendant and the other Released Parties from the Released Claims. The Releases are narrowly tailored to the claims made in the Action as a result of the Data Incident.

42.    The Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to submit Claims for the same relief— Cash Payments and Medical Data Monitoring, and all get the benefit of Defendant's security enhancements to protect their Private Information.

43.    Despite the early stage of litigation, Plaintiffs and Class Counsel here were able to complete a fulsome investigation of the facts to reach a complete understanding of the value of the Action, as well as the attendant risks of continued litigation. Indeed, prior to mediation, the Parties engaged in significant informal discovery, after the service of formal discovery requests, addressing the full scope and impact of the Data Incident, Defendant's remedial efforts following the Data Incident, and a detailed summary of the Data Incident. Class Counsel also consulted with liability and damage experts. The Parties exchanged mediation briefs, enabling them to better and sufficiently evaluate the merits of Plaintiffs' claims and the strengths of Defendant's defenses.

Early settlement where, as here, the Parties are adequately informed to negotiate is to be commended.

44.     Class Counsel have fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed settlement fairly resolves the Parties' respective differences. With a thorough understanding of the Data Incident, it is Class Counsel's strong opinion that the Settlement is a fair, reasonable, and adequate result for the Settlement Class and should be granted Final Approval.

### Fact Supporting Application for Attorneys' Fees, Costs, and Service Awards

45.     The Parties did not discuss attorneys' fees, costs, and Service Awards until after they reached agreement on all material Settlement terms. The Settlement is not contingent on approval of the requests for attorneys' fees, costs, or Service Awards, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force.

46.     Plaintiffs were appointed as Class Representatives in the Preliminary Approval Order. The Settlement calls for reasonable Service Awards for the Class Representatives of up to $2,500.00 each. The Service Awards are intended to compensate Class Representatives for their efforts on the Settlement Class's behalf.

47.     Class Representatives have ably represented the Settlement Class and have been instrumental in assisting Class Counsel throughout this proceeding. Class Representatives initiated and remained in contact with Class Counsel; assisted in the investigation of the Action; reviewed and approved the pleadings in this case and the Agreement; supervised and monitored Class Counsel, remaining available for consultation throughout the negotiation process; and provided background documents and followed the progress of this litigation to ensure the Settlement Class

received the best recovery possible given the particular circumstances and risks of the Action. Class Representatives are committed to continuing to assist Class Counsel through and following Final Approval. They were also prepared to complete their responsibilities, including being deposed and testifying at trial, if needed.

48.    Class Counsel seek a $6,000.000.00 attorneys' fees award (one-third of the Settlement Fund) under the Second Circuit's percentage of the fund method, and reimbursement of $40,223.84 for reasonable litigation costs. The forms of Notice advised the Settlement Class of these intended requests.

49.    As the Court held at the Preliminary Approval Stage, Class Counsel are highly qualified and have a great deal of experience litigating complex consumer class actions, including in the data privacy context. This experience proved beneficial to Plaintiffs and the Settlement Class during Settlement negotiations.

50.    In evaluating the quality of Class Counsel's representation, Defendant is also ably represented by Baker & Hostetler LLP, a national law firm with extensive data breach litigation experience, presenting a formidable adversary for Plaintiffs and Class Counsel to successfully prosecute the Action in the absence of the Settlement.

51.    Class Counsel have vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, Class Counsel relied on their experience in data breach litigation, their detailed investigation of this particular Action, and informal discovery exchanged in connection with settlement negotiations.

52.    Class Counsel and the other Plaintiffs' counsel have not been paid for their extensive efforts in securing the Settlement for the Settlement Class, or reimbursed for litigation

costs advanced or incurred. They all took this case on a contingency basis unaware if they would get paid for their attorneys' fees or costs advanced. Class Counsel and the other Plaintiffs' counsel assumed the risk of this engagement and worked diligently and efficiently to obtain a substantial result knowing full well their efforts might not bear fruit. Attorneys' fees were not guaranteed

53.    The retention agreements with Plaintiffs in this Action were all contingent fee agreements. No payment of attorneys' fees would occur in this case but for an attorneys' fee award in an individual or class settlement. Class Counsel and the other Plaintiffs' counsel took on this case with no guarantee they would receive any compensation for their work, which occupied significant resources at their respective firms even before this Action was filed. There was a risk of nonpayment or underpayment for Class Counsel's and other Plaintiffs' counsels' time, with all of them foregoing the opportunity to work on other fee-generating cases.

54.    Class Counsel and the other Plaintiffs' counsel remain completely uncompensated for the time invested in the Action, in addition to the substantial costs they have advanced. Public policy concerns—ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—also support the requested fee. This practice encourages attorneys to assume this risk and allows plaintiffs who would otherwise not be able to hire an attorney to obtain competent counsel.

55.    Considering Defendant has compelling defenses, continuing to pursue this Action posed a significant risk for Plaintiffs and the Settlement Class, and makes litigating data breach cases less desirable in general.

56.    Class Counsel's coordinated work paid dividends for the Settlement Class. As noted above, they self-organized 18 related actions and then successfully lead the resolution of the Action through the fair, reasonable, and adequate Settlement presented to the Court for Final

Approval. Each of the above-described efforts was essential to achieving the Settlement. Class Counsel's time and resources devoted to prosecuting and settling this Action, and the additional time and resources of the other Plaintiffs' counsel who supported the litigation, justify the requested attorneys' fee.

57.     Prosecuting and settling these claims demanded considerable time and labor, making this attorneys' fee request reasonable. Class Counsel's organization ensured the work of Class Counsel and other Plaintiffs' Counsel was coordinated to maximize efficiency and minimize duplication of effort. Substantial time and resources were dedicated to investigating the Data Incident, interviewing potential plaintiffs, researching and developing the legal claims at issue, drafting separate class action complaints to initiate litigation for the Plaintiffs, working together to consolidate the 18 related actions and file a Consolidated Complaint, opposing Defendant's motion to dismiss, serving formal and informal discovery (including the ESI protocol and stipulated protective order), consulting with liability and damage experts, and preparing for and attending mediation. Significant time was devoted by Class Counsel to negotiating and drafting that Agreement, Notices, Claim Form, Preliminary Approval Order, and Final Approval Order, the Preliminary Approval process, and to all actions required thereafter pursuant to the Preliminary Approval Order. Each of the other Plaintiffs' counsel maintained communications with their respective Plaintiffs and reviewed the Settlement terms with them.

58.     Class Counsel spent substantial additional time addressing implementation of the Notice Program and Claim Process, communicating with Settlement Class Members, and preparing the Motion for Final Approval. Time will also be spent preparing for and attending the Final Approval Hearing. Finally, Class Counsel will devote substantial time to Settlement Administration, should Final Approval be granted, to ensure Valid Claims are paid and the

Settlement is fully implemented.

59.    A lodestar crosscheck is not required in the Second Circuit. Nevertheless, Class Counsel provides information for such a crosscheck should the Court decide to perform one. The total lodestar for the participating law firms from commencement of the 18 related actions through today is $1,019,841.75. With Class Counsel respectfully requesting a $6,000.000.00 attorneys' fee award (one-third of the Settlement Fund), the lodestar multiplier is a reasonable 5.88. Class Counsel estimate they will spend an additional 50 hours through conclusion of the Settlement process, including preparing for and attending the Final Approval Hearing and working with the Settlement Administrator and the Settlement Class to ensure all Settlement Class Member Benefits are properly distributed. The additional time will increase the lodestar by approximately $50,000.00, resulting in a lower multiplier. Should the Court require additional information concerning the lodestar amount, it will be provided for *in camera* inspection.

60.    Class Counsel request reimbursement of $40,223.84 for litigation costs, comprised of actual out-of-pocket costs that Class Counsel and other Plaintiffs' counsel reasonably and necessarily incurred and paid in connection with the prosecution of the Action and the Settlement, including filing fees, service fees, *pro hac vice* applications, mediation fees, expert fees, and travel and accommodation expenses. A summary of the costs is below:

| Category | Amount |
|---|---|
| Filing, Service, and *Pro Hac Vice* Fees | $5,626.65 |
| Mediation Fees | $12,000.00 |
| Travel and Accommodations | $10,082.19 |
| Expert Fees | $12.515.00 |
| **Total** | **$40,223.84** |

15

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true. Executed in Fort Lauderdale, Florida on January 2, 2026.

*/s/ Jeff Ostrow*
Jeff Ostrow

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true. Executed in Chicago, Illinois on January 2, 2026.

*/s/ Gary M. Klinger*
Gary M. Klinger

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true. Executed in Oklahoma City, Oklahoma on January 2, 2026.

*/s/ William B. Federman*
William B. Federman

16